Joyce LOGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 992–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 30, 1985.

Douglas W. Skemp, Dallas, for appellant.

Henry Wade, Dist. Atty., and Ruth E. Plagenhoef and Jeffrey B. Keck, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Joyce Logan, appellant, was convicted by a jury of committing the offense of aggravated robbery. Punishment, enhanced by one of two alleged prior felony convictions, was assessed by Hon. Thomas B. Thorpe, the trial judge, at forty-five years' confinement in the Department of Corrections.

A majority of a panel of the Dallas Court of Appeals, in an opinion authored by Justice Akin, ordered the conviction of appellant set aside.[1] See *Logan v. State*, 679 S.W.2d 55 (Tex.App.—Dallas 1984). The majority of the panel found that Judge Thorpe should have declared a mistrial during appellant's trial because of a statement that Marshall Gandy, who was one of the prosecutors in this cause,[2] made to the jury during his jury argument at the guilt stage of appellant's trial. The majority found that Gandy's statement was so egregious that it could not be cured by Judge Thorpe's instruction to the jury to disregard it.

We will reverse the judgment of the court of appeals because we find, first, that it is arguable that Gandy's statement was not improper, and, secondly, assuming that it was improper, we find and hold that Judge Thorpe's instruction to the jury to disregard the statement was sufficient to cure any error.

The complained of argument is as follows:

> What is the relationship between those two women [appellant and Janice Lehman, an alibi witness], folks? They were roommates for five or six years. Mr. Hight [appellant's attorney] chooses in his own words to characterize it as an 'economic unit,' a 'family.' *Of course, the two of them were sleeping together those five years.* (Our emphasis.)

The record reflects that appellant's counsel objected to the last statement, Judge Thorpe sustained his objection and then instructed the jury to disregard the statement, "I will sustain the objection to the exact words used by counsel in his argument ... I have sustained the objection, and by sustaining it you [the jury] will disregard those words quote 'sleeping together.'" Judge Thorpe, however, refused to grant appellant's counsel's motion for mistrial.

█ Our law provides that an accused person shall receive a fair trial, which, of course, is one free from improper jury argument by the prosecuting attorney. *Richardson v. State*, 158 Tex.Cr.R. 536, 257 S.W.2d 308 (App.1953). However, not

---

1. Justices Carver and Shumpert were the other members of the panel. Justice Carver filed a dissenting opinion to the reversal.

2. David Jarvis was the other prosecuting attorney for the State.

every improper argument by a prosecuting attorney will cause a conviction to be reversed. *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Cr.App.1982). Generally speaking, even if a prosecuting attorney's jury argument is found to be improper, an instruction by the trial judge to the jury to disregard the improper argument is usually sufficient to cure the error. *Anderson v. State*, supra. It is only when a statement to a jury is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to the jury to disregard it that reversible error will result. *Blansett v. State*, 556 S.W.2d 322, 328 (Tex.Cr.App. 1977). In order to fall within this requirement, the argument must be extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision. *Duffy v. State*, 567 S.W.2d 197, 206 (Tex.Cr.App.1978), cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978); *Stiggers v. State*, 506 S.W.2d 609, 613 (Tex.Cr.App.1974). Whether an argument is harmful enough to warrant reversal is ultimately determined on the basis of the argument's *probable* effect on the minds of the jurors. *Blansett v. State*, supra. Of course, complained of argument must be viewed in light of the facts that were adduced and in context.

Our interpretation of the opinion of the court of appeals is that it focused upon only one of the possible inferences that one might draw from Gandy's statement. However, we find and hold that another inference that the jury could have drawn from Gandy's statement is that the jury should have viewed Lehman's testimony with caution and judged her credibility in light of her longstanding relationship with appellant. Furthermore, when viewed in light of the facts adduced, and in context, Gandy's statement also may have been nothing more than idiomatic speech.

The facts of this cause reflect that at approximately 8:20 a.m. two persons committed a robbery at the Godwin Pharmacy, located in the Jeff Davis Shopping Center in Dallas. Money and controlled substances were taken. The owner of the pharmacy and two of his employees positively identified appellant in court as being one of the two robbers, each of whom was armed with a firearm.

Appellant's defense was alibi, which was supported by several witnesses. One of her witnesses was Janice Lehman. Lehman testified that appellant was working for her that morning. She also testified that she and appellant had known each other for almost seven years, having met when they both worked for the Salvation Army of Dallas. They became good friends. For approximately five or six years, appellant, with her niece, and Lehman, with her daughter, shared a three-bedroom house. Appellant and Lehman occupied one bedroom of the house and the children occupied the other two bedrooms. The record does not reflect how many beds were maintained in the bedroom which appellant and Lehman occupied. Appellant's trial counsel characterized their living arrangement as "a little economic unit" in which they "shared expenses together."

■ Judge Thorpe ruled, after a hearing was held outside the jury's presence, that the prosecuting attorneys could not ask Lehman such questions as the following: "Isn't it true that you [and appellant] were homosexual lovers?" and "Now, you are under oath, and I'm asking you point blank, isn't that a fact that you had a sexual relationship with that defendant, Joyce Ann Logan?" During the hearing, Lehman answered the questions in the negative.

The record is clear that neither Gandy nor Jarvis thereafter violated the trial judge's ruling. Had they done so, they would have subjected themselves to contempt of court. Furthermore, but in light of what this Court has held in the past, regarding a prosecuting attorney asking a witness a question in bad faith, such might have been sufficient in itself to have warranted a reversal. Cf. *Keel v. State*, 434 S.W.2d 687 (Tex.Cr.App.1968); *Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972); *Solis v. State*, 492 S.W.2d 561 (Tex.Cr.App. 1973).

Gandy's statement to the jury, "Of course, the two of them were sleeping together, those five years," when viewed standing alone, might very well have caused a rational trier of fact to draw the inference that appellant and Lehman previously had a homosexual relationship. However, the issue that we must decide is not whether the statement supports the inference that appellant and Lehman had a homosexual relationship, but, instead, is whether, from the facts and the argument, that was the *sole* inference that the jury could have drawn from Gandy's statement.

We find and hold that when viewed in light of the evidence that was adduced, that concerned the relationship between appellant and Lehman, and when viewed in context of Gandy's remarks, the jury could have interpreted Gandy's statement to mean that it should view with caution the alibi testimony of Lehman because of the close relationship that she and appellant previously had. Furthermore, when taken in context, we find that Gandy's statement could represent nothing more than idiomatic speech. In sum, we find it questionable that the only inference the jury could have drawn from Gandy's statement was that appellant and Lehman had been homosexual lovers.

■ Assuming arguendo, however, that Gandy should not have made the statement to the jury, was Judge Thorpe's instruction to the jury sufficient to cure the error? We answer the question in the affirmative.

As previously observed, the general rule is that an instruction by the trial judge to the jury to disregard improper argument will usually cure the error, unless the prosecuting attorney subsequently attempts to circumvent the court's ruling that such argument was improper, which did not occur in this cause. *Anderson v. State,* supra.

In holding that Gandy's statement to the jury was not only improper argument, but incurable error as well, the court of appeals relied heavily upon this Court's decision of *Brown v. State,* 168 Tex.Cr.R. 67, 323 S.W.2d 954 (App.1959), in which the defendant had been convicted of unlawful posses-

sion of barbiturates. Although *Brown,* supra, has many similarities to the case at bar, we find that it is distinguishable.

Contrary to this cause, the prosecuting attorney in *Brown,* supra, in the presence of the jury, asked the defendant's principal witness the following question: "Q: All right, now, Grady, so that we can better understand your position in this case, I will ask you if it isn't a fact, Grady, that you have been and you are in love with this Defendant to the extent that you have had sexual relations with him?" The question was not answered. Objection to the question was sustained and the jury was instructed to disregard the question, but motion for mistrial was overruled. Thereafter, but for the above question that he had asked, the prosecuting attorney then asked the witness what would have otherwise been innocuous questions. It is obvious to us that when the prosecuting attorney asked the highly improper question he threw the proverbial momma skunk into the jury box, see *Dunn v. U.S.,* 307 F.2d 883, 886 (5th Cir.1962), and thereafter, by asking what would otherwise have been innocuous questions, he then threw into the jury box all of momma skunk's pole kittens.

In this instance, however, although it is arguable that Gandy possibly gave the jury a whiff of skunk odor, we find and hold that the trial judge immediately and effectively sanitized the jury box with his instruction to disregard.

Furthermore, the error that was committed in *Brown,* supra, is better viewed in the context of this Court's cases that hold reversible error may occur solely because a prosecuting attorney asked a defense witness an egregious question. See *Mounts v. State,* 148 Tex.Cr.R. 149, 185 S.W.2d 731 (App.1945), and its progeny.

The opinion of *Brown,* supra, clearly reflects that when the prosecuting attorney in that cause asked what was under the facts and circumstances of that cause a highly improper question, he did so solely to inflame the minds of the jury. Under

the circumstances of that cause, the question asked was of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury that the defendant and his witness were homosexual lovers. In this instance, however, at no time in the presence of the jury did either prosecuting attorney ask any of the witnesses for appellant a similar question. Given the facts of *Brown,* supra, the question asked was obviously harmful to the defendant in that cause, and this Court correctly reversed the conviction. Cf. *Gonzales v. State,* 685 S.W.2d 47 (Tex.Cr.App.1985).

Under our facts, however, we are unable to conclude that Gandy's statement to the jury was of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors, that appellant and Lehman had a homosexual relationship, *if* that was the inference that any of the jurors drew from Gandy's statement. Also see *White v. State,* 444 S.W.2d 921 (Tex.Cr.App.1969).

We hold in this instance that the instruction given by the trial judge was sufficient to cure the error, if any.

The judgment of the court of appeals is reversed and the cause remanded to that court for it to consider appellant's remaining ground of error, that appellant received the ineffective assistance of counsel.

ONION, P.J., concurs in the result.

CLINTON and MILLER, JJ., dissent.