GAINEY 



 TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00268-CR







Charles Gainey, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0950455, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 A jury found appellant Charles Gainey guilty of aggravated robbery and assessed
punishment at 10 years' imprisonment. Tex. Penal Code Ann. § 22.02 (West 1994). In two
points of error, appellant contends that statements made by the prosecutor during opening and
closing arguments violated due process and denied appellant a fair and impartial trial. We will
affirm the judgment of conviction.



BACKGROUND


 On the morning of January 10, 1995, Margaret Prehoda and her two preschool age
children arrived at Highland Mall in Austin to go shopping. After removing her children from
her 1987 Oldsmobile, Prehoda was confronted by appellant who demanded the keys to her car. 
Prehoda threw her keys in one direction and her wallet directly at appellant. The wallet broke
open when it hit the ground. As appellant retrieved the keys, Prehoda attempted to pick up her
wallet, but when she reached to pick up the wallet, appellant pulled out a gun and "put it in [her]
face." The gun was four or five feet from her face. Attempting to move away from appellant,
Prehoda began to back up and scream. She then tripped and fell on top of her young children
who, by this time, were also screaming.

 Alerted by the screaming, two men ran to the scene. One of the men tackled
appellant and wrestled him to the ground despite appellant's vigorous resistance. Minutes later,
two uniformed police officers arrived at the scene. In the struggle to restrain and handcuff
appellant, appellant's gun discharged. Appellant was then arrested and taken to the police station
where he signed a statement confessing to the robbery and expressing remorse for his actions.

 Prehoda, the man who tackled appellant, and the police officers who arrived at the
scene were the primary witnesses at the guilt-innocence stage of the trial, and appellant's
confession was admitted as evidence. The jury then convicted appellant of aggravated robbery. 
Appellant testified on his own behalf during the punishment phase.



DISCUSSION


 In two points of error, appellant claims that comments made by the State during
opening and closing arguments deprived him of a fair and impartial trial and violated his right to
due process guaranteed by the Fifth and Fourteenth Amendments to the United States
Constitution. In his first point of error, appellant complains about two separate comments made
during the prosecutor's opening statement. Appellant contends the following comment injected
evidence into the guilt-innocence phase of the trial which is ordinarily admissible only at the
punishment phase of trial:



[BY THE PROSECUTOR]: [Prehoda] is going to tell you about how her children
were screaming and hysterical and how this has affected her children and how they
can no longer trust strangers, how they have been affected psychologically.


[APPELLANT'S COUNSEL]: Judge, I'm going to object to any reference to the
effect upon the children at this phase of the trial.



The trial court sustained appellant's objection on the record. The jury was subsequently instructed
to disregard the comments and appellant's motion for mistrial was denied. The prosecutor
abandoned any reference to the effect of the robbery on the children for the duration of his
opening statement. 

 Appellant further objects to these comments also made during the State's opening
statement:



[BY THE PROSECUTOR]: Officer Reiner will tell you how she went and tried
to retrieve the gun, and in the process, that gun went off and a car was shot. 
Fortunately, there was no one in that. The evidence will show that a capital
murder was barely avoided.



The trial court sustained appellant's objection. The jury was again instructed to disregard the
comments, and the trial court again refused appellant's motion for mistrial.

 Appellant claims the trial court's refusal to grant his motions for mistrial constitutes
reversible error. (1) However, improper prosecutorial argument results in reversible error only
when the argument is so inflammatory that its prejudicial effect cannot reasonably be cured by
judicial instruction to disregard argument. Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim.
App. 1991) (citing Logan v. State, 698 S.W.2d 680, 682 (Tex. Crim. App. 1985), cert. denied,
112 S. Ct. 2944 (1992)). Aggravated robbery involves the use or display of deadly force during
the commission of a robbery. Because of the nature of aggravated robbery, the use or display of
deadly force may easily result in capital murder. By his statement that capital murder was barely
avoided, the prosecutor merely pointed to an inference that the jury had likely already made. 
Further, regarding the prosecutor's statement about the effect on the children, evidence of the
children's screams was introduced during the guilt-innocence stage. The jury could easily infer
from the evidence concerning the children's screaming that the incident which made them scream
in the first place had some sort of effect on them. In this case, the prosecutor's statements, when
viewed in light of the entire record, are not so extreme or manifestly improper as to amount to
reversible error. See id. (citing McKay v. State, 707 S.W.2d 23, 38 (Tex. Crim. App. 1985),
cert. denied, 479 U.S. 871 (1986)). Absent extreme or manifestly improper statements, an
instruction to disregard is sufficient to cure an improper comment. Wilkerson v. State, 881
S.W.2d 321, 327 (Tex. Crim. App.), cert. denied, 115 S. Ct. 671 (1994). Accordingly, we
overrule appellant's first point of error.

 In his second point of error, appellant argues that the prosecutor's misstatements
of the evidence during closing arguments at the punishment phase violated due process and denied
appellant a fair and impartial trial. In one instance, the prosecutor stated:



[BY THE PROSECUTOR]: We know that [appellant] was . . . required to take
medication to control his problem and we know also, and I think this is very
significant, that when he doesn't take his medication, he is prone to violence and
bad judgment of the type that was the basis for this whole case. We also know that
he was told by his fiance [sic] to take his medication and he didn't do that.



The trial court sustained appellant's objection to this misstatement of the evidence. The jury was
instructed to disregard, and appellant's request for a mistrial was denied.

 It was actually appellant's sister who testified about the medication during the
punishment phase. She testified that appellant's personality was "real smooth" while he was
taking his medication and that she noticed a marked difference when he stopped taking his
medication. The sister further testified that she encouraged appellant to keep taking the
medication and that appellant told her he did not want to take the medicine.

 The prosecutor obviously confused the testimony of appellant's sister with the
testimony of appellant's fiancee. An inadvertent slip of the tongue does not amount to reversible
error. See Hernandez, 819 S.W.2d at 820. Further, the trial court's timely instruction to
disregard cured any prejudice which might have resulted from the inaccurate statement. See
Wilkerson, 881 S.W.2d at 327.

 In another instance, the prosecutor inappropriately stated:



[BY THE PROSECUTOR]: But he is and I still contend, a time bomb, and he
needs to be warehoused, because all the people who came to testify here, we didn't
have to drag them in. You saw how they came in. Percy Henry, all of them. 
They wanted to come. They had a duty they felt to tell you. You better open your
eyes.



Appellant objected and noted that every witness the State called was here under compulsion of
subpoena and compulsory process. Notably, appellant did not object to the "time bomb" reference
or to the remark about "opening your eyes." The trial court sustained appellant's objection,
instructed the jury to disregard, and denied appellant's motion for mistrial. Although this
statement is inaccurate and may fall outside the scope of permissible jury argument, appellant's
brief does not state why such a misstatement is so prejudicial as to render it incurable by a timely
instruction to disregard. See Garcia v. State, 833 S.W.2d 564, 572 (Tex. App.--Dallas 1992),
aff'd, 868 S.W.2d 337 (Tex. Crim. App. 1993) (articulating permissible areas of jury argument);
see also Wilkerson, 881 S.W.2d at 327 (noting instructions generally cure statements which are
not extreme or manifestly improper). Appellant was not incurably prejudiced in this case. It is
very unlikely a jury would have altered its decision based on whether the witnesses were present
under compulsory process rather than of their own volition. Accordingly, we overrule appellant's
second point of error.



CONCLUSION


 We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: May 1, 1996

Do Not Publish
1.   Appellant actually argues that the prosecutor erred in making the statements, rather
than asserting that the trial court erred in failing to grant appellant's motion for a mistrial. 
Thus, the State contends that appellant has not presented an issue for the court to review. 
However, we liberally construe points of error in order to obtain a just, fair, and equitable
adjudication of the rights of the parties. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989). 



R]: We know that [appellant] was . . . required to take
medication to control his problem and we know also, and I think this is very
significant, that when he doesn't take his medication, he is prone to violence and
bad judgment of the type that was the basis for this whole case. We also know that
he was told by his fiance [sic] to take his medication and he didn't do that.



The trial court sustained appellant's objection to this misstatement of the evidence. The jury was
instructed to disregard, and appellant's request for a mistrial was denied.

 It was actually appellant's sister who testified about the medication during the
punishment phase. She testified that appellant's personality was "real smooth" while he was
taking his medication and that she noticed a marked difference when he stopped taking his
medication. The sister further testified