# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00303-CR

**Raymundo Perales Vasquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 0993414, HONORABLE JON WISSER, JUDGE PRESIDING

A Travis County jury found the appellant, Raymundo Perales Vasquez, guilty of burglary of a habitation with the intent to commit sexual assault. *See* Tex. Pen. Code Ann. § 30.02 (West Supp. 2001). On appeal, Vasquez contends that the trial court erred in denying a mistrial after the prosecutor asked him an allegedly improper question during cross-examination. We will overrule this point of error and affirm the conviction.

### FACTUAL BACKGROUND

Vasquez admitted to many of the facts underlying his conviction.[1] According to Vasquez, he entered the home of Maria Aguilar through an unlocked door on the evening of

---

[1]  Vasquez made these admissions at trial and in a partial oral confession to the Austin Police Department during a taped interview. Vasquez is not an English speaker. At many points, the transcript of his confession was marked as unintelligible by the translator. For that reason, we rely almost exclusively on the testimony Vasquez gave at trial.

September 19, 1999. He did so without permission or lawful authority. The sole impetus for his entry was a desire to have sexual intercourse with Aguilar.

Vasquez's and Aguilar's stories diverge about the events that followed his entry into her house. At trial, Aguilar described their extremely violent struggle: she testified that Vasquez pulled her hair, bit her neck, hit her, touched her intimate body parts, threatened her with a knife not to scream, cursed at her, threw her on the floor, and would not leave her house until she took off her underpants and allowed him to take them with him. Aguilar was pregnant at the time of the incident and testified that even after she told Vasquez of her pregnancy, he continued to attack her.

Vasquez testified that although he entered Aguilar's house solely because he wanted to have sexual relations with her, he would not have forced Aguilar to have sex with him. Vasquez testified that although he struggled with Aguilar, he only pulled her hair and grabbed her legs. Furthermore, according to Vasquez, they both fell to the floor, and he did not throw her. He also admitted to taking Aguilar's underpants, but insisted that he immediately threw them into a drainage ditch near her house. Vasquez repeatedly emphasized that once he learned Aguilar was pregnant, something inside him changed and he knew he had to leave her house.

In addition, Vasquez admitted to wearing a pair of latex gloves into Aguilar's house in order to avoid leaving fingerprints. He also claimed, however, that he originally purchased the gloves to protect his hands while dyeing a pair of boots, not because he had premeditated this

incident. In the end, Vasquez left the gloves on Aguilar's floor.[2] Fingerprints inside the gloves matched Vasquez's, and the gloves were introduced into evidence.

Finally, Vasquez admitted that he had seen Aguilar in local bars, but he denied ever having been to Aguilar's house before the incident. According to Vasquez's testimony, he did not go to Aguilar's house for the purpose of committing the crime of which he was convicted in the trial court. Vasquez testified that he was walking home from watching soccer in a nearby park, and when he saw Aguilar through her window, he stood outside her house for approximately one hour, trying to fight his urge to go into the house. Aguilar, on the other hand, testified that Vasquez had been to her house numerous times, looking for friends he insisted once lived there. Furthermore, she stated that Vasquez had become angry at her when she had told him that his friends no longer lived at her house and that she had no means of contacting them.

Vasquez was the only witness for the defense. Counsel for the defense characterized Vasquez as extremely penitent and cooperative, both at trial and in his initial confession. At trial, Vasquez's counsel emphasized the fact that Vasquez left Aguilar's house when Aguilar pled with him not to hurt her because she was pregnant. In response, the prosecution asked Vasquez on cross-examination whether he knew that doctors had told Aguilar she almost lost her baby because of the incident. The defense objected to this question on the ground that it was impermissible hearsay.[3] The trial court sustained the objection and instructed

---

[2] Vasquez testified that he purchased and wore one pair of gloves. Three gloves were recovered at the crime scene.

[3] Neither party raises the issue of preservation of error on this point. We assume the fact that Vasquez requested and received an instruction to the jury to disregard the prosecutor's question,

3

the jury to disregard the prosecutor's question. Vasquez moved for a mistrial, and the trial court denied this request. That denial of a mistrial is the sole point of error ascribed to the trial court.

**DISCUSSION**

Vasquez argues that the prosecutor's question was so inflammatory and prejudicial as to deny him a fair trial, and that the denial of mistrial was therefore erroneous. We review a trial court's decision to deny a mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim App. 1999). The mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused. *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985). Texas courts presume that an instruction to disregard an improper question will be sufficient to remove the question's impact from the jury:

> In the vast majority of cases in which . . . testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. . . . In essence this Court puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations.

*Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (citations omitted); *accord Cooks v. State*, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992); *Turner v. State*, 719 S.W.2d 190, 194 (Tex. Crim. App. 1986).

---

and the fact that he requested a mistrial, were sufficient to alert the trial judge that Vasquez was objecting on the ground of undue prejudice and not on hearsay grounds alone. We treat the point of error as preserved. *See Nenno v. State*, 970 S.W.2d 549, 562-63 (Tex. Crim. App. 1998) (treating hearsay objections as preserving improper prejudice arguments).

4

Error in the asking of an improper question will not be cured, however, where it appears that the question alone is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Brown*, 692 S.W.2d at 501. To fit within this category, the question must be either extreme or manifestly improper, or it must inject new and harmful facts into the case or violate a mandatory statutory provision. *Logan v. State*, 698 S.W.2d 680, 682 (Tex. Crim. App. 1985) (citing *Duffy v. State*, 567 S.W.2d 197, 206 (Tex. Crim. App. 1978); *Stiggers v. State*, 506 S.W.2d 609, 613 (Tex. Crim. App. 1974)). In determining whether this exception was met and whether a mistrial was therefore required, we must look to the facts and circumstances of the case. *See Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990) (discussing standard for mistrial in the context of improper jury argument).

A question is not so inflammatory and prejudicial as to necessitate a mistrial merely because it concerns the victim's pregnancy. In *Gleffe v. State*, 509 S.W.2d 323, 325 (Tex. Crim. App. 1974), the defendant was accused of several crimes, including the attempted robbery of a grocery store. At trial, a bystander to this attempted robbery testified that his wife suffered a miscarriage after the defendant pushed her down. The defendant objected. The objection was sustained; the jury was instructed to disregard the witness's testimony on the miscarriage but the trial court denied a mistrial. The Texas Court of Criminal Appeals upheld the denial, noting that "[t]he record does not reflect that the prosecutor acted in bad faith in propounding the complained of question, nor does the record reflect any calculated attempt to circumvent rulings of the court

5

or any repetition of such questioning." *Id.* (concluding that the court's instruction to disregard was sufficient under the circumstances).

This case bears a number of similarities to *Gleffe*. Here, there is no showing that the prosecutor asked the question in bad faith, or in contravention of any order of the trial court. Once the objection was sustained, the prosecutor dropped the line of questioning altogether. Indeed, the question in *Gleffe* was answered to the defendant's detriment; here the question went unanswered. *See, e.g.*, *Cooks v. State*, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992) ("When a witness does not have the opportunity to respond to an improper question, the court's instruction to disregard will render the error harmless." (citing *Turner*, 719 S.W.2d at 194)).

As in *Gleffe*, it seems likely that the prosecutor in this case was attempting to show the impact of the crime on the victim rather than attempting to prejudice the jury against the defendant. Such an attempt is not extreme or manifestly improper. *See Hinojosa v. State*, 4 S.W.3d 240, 252 (Tex. Crim. App. 1999) (one sentence of alleged victim impact testimony introduced at guilt/innocence phase of capital murder held not to be error where jury was given instruction to disregard and there was sufficient evidence to link defendant to crime); *Burks v. State*, 876 S.W.2d 877, 902 (Tex. Crim. App. 1994) (prosecutor's questions about what murder victim would have been doing on day of trial had he "not been shot like a dog by somebody" held not to be so inflammatory that impression could not have been withdrawn from jury where questions were unanswered and were designed to "point out the effect of the absence of the deceased from the community where he worked"); *Boyle v. State*, 256 S.W.2d 574, 575 (Tex. Crim. App. 1953) (prosecutor asking defendant whether he knew victim was still unconscious at

6

time of trial held not to be so improper as to require mistrial because "state had the right to show the extent of the injuries inflicted upon [the victim]" and there was no showing that question was asked in bad faith); *Gonzalez v. State*, 735 S.W.2d 320, 324 (Tex. App.–Austin 1987, no pet.) (testimony on impact of sexual assault on victim's life, offered during guilt/innocence phase and admitted over objections of defense counsel, not error requiring mistrial where trial court instructed jury to disregard the testimony).

Further, we cannot say the inquiry, if improper, resulted in obvious harm to the accused. *See Brown*, 692 S.W.2d at 501. The prosecutor's question in this case seems consistent with the jury's common knowledge. *See Nenno v. State*, 970 S.W.2d 549, 559 (Tex. Crim. App. 1998). In *Nenno*, the court held a prosecutor's argument was not improper when it implied facts that were common knowledge and supported by the record, despite defendant's argument that they were outside the record. *Id*. In that case, the court said the jury could have inferred from defendant's own account of the struggle that the victim's death by strangulation was not immediate. *Id*. Here, the jury could infer potential harm to the fetus, even from Vasquez's own testimony that he and the victim merely fell off the bed. In light of all these factors, the trial court did not err in denying the requested mistrial.

**CONCLUSION**

We hold that the question asked of the defendant about the possible loss of the fetus was not manifestly improper, and the jury instruction to disregard the question cured any error.

The trial court acted within its sound discretion in denying the mistrial, and we affirm its judgment of conviction.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   March 29, 2001

Do Not Publish