Dissenting opinion issued November 7, 2002













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00911-CR
____________
 
GREGORY THOMPSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 803271
 

 
 
OPINION DISSENTING FROM DENIAL
  OF EN BANC CONSIDERATION

           Bad facts do not have to make bad law. All of us can agree that the
complained-of portion of the prosecutor’s punishment argument in this case was
beyond the pale. All of us may even be able to agree to reverse this case within the
normal bounds of appellate review. Because the Panel Opinion reaches beyond those
normal bounds, however, I respectfully dissent to the denial of en banc review.
          There are two errors in the Panel Opinion: (1) the conclusion that the
prosecutor’s argument was incapable of being cured by an instruction to disregard
and (2) the conclusion that the error is constitutional, rather than other, error. 
Although the first conclusion can be reached by addressing arguments made by
appellant, the second conclusion is contrary to the arguments of the parties. The
bottom line is that the Panel Opinion cites no case calling for either of its erroneous
conclusions, when it could have reversed this case, within the normal bounds of
appellate review, by focusing on ineffective assistance of counsel, an issue actually
raised by appellant.
Was the Argument Capable of Being Cured by an Instruction?
          First, consider the argument itself and the likely effect it would have had on the
jury, even in the absence of any objection or instruction to disregard. To place the
argument in context,


 the argument consists of seven lines in a three-page argument
that urged the jury to assess the maximum no less than 10 times based on the
aggravated facts of the case, particularly the facts adduced at the punishment phase:
          Ladies and gentlemen, it’s like what Paul Harvey always says,
“Now you’ve heard the rest of the story.” You know what kind of
person this man is. You didn’t know beforehand but you sure do know
now. 
          This is a man that steals from young women. He steals from
ministers, from individuals who are in business that give him jobs and
give him a chance. He’s a user. He’s a con man. He’s a major offender,
someone Sgt. Kucifer and other officers have been looking for for a long
time. When three different police agencies, the Sheriff’s Department of
Harris County, Houston Police Department, Texas Department of Safety
Motor Vehicle Theft Division, when they all have investigations on you
and want you, you know you’re a bad guy. 
          Just look at the amount of vehicles that were stolen or that he
attempted to steal. He has taken almost $200,000 worth of vehicles. 
That’s unbelievable. I wish he could get more than ten years. I’m
sorry that’s all you can give him but that is the maximum.
          He stole thousands of dollars of cash among other things from
other individuals. He got $2700 from Mr. Gathers. He got several
hundreds of dollars off of Ms. Pittman and her father who helped her
take care of her credit problems. You heard about Ms. Darby’s credit
card bill. Does he ever try to pay anything back? No. He expects other
people to give him something but he never gives anything in return. He
just takes and takes and takes. 
          This man is not going to stop. Do you think he’s going to stop? 
Look at his history. It goes back to 1996. Maybe the fact he represented
himself as a lawyer doesn’t offend you but it does offend me. He takes
people’s money, their hard earned money, and says he’s a professional,
a lawyer. He is not entitled to do that.
          Look at him. The only way you’re going to keep him from
doing anything more is to give him the maximum sentence. Send a
message to the community that you gave him ten years in prison and
assessed a $10,000 fine. Fill out that very bottom of the verdict form
there. That’s the most you can do to this man.
          When somebody asks you later what this man got, you’ll be
able to say he got ten years and a $10,000 fine or whatever it is that
you give him. You’re going to have to tell them about the justice
system. If you give him any less, what does that say? What happened? 
I’m asking you to assess the maximum sentence. Don’t let anything
less than that happen.
 
          Ladies and gentlemen, there’s something important that I
cannot tell you about concerning why you should not give him
anything less than ten years. There’s a very important reason but
legally I’m not allowed to tell you what it is but it is very important. 
Trust me on this. If you give him less than ten years, you will find out
later what’s going to happen.
 
          Defense Counsel:  I would object. That is outside the record. I
would object.
          The Court:             Sustained.
          Defense Counsel:  I’d move for a mistrial.
          The Court:             Denied.
 
          I’m going to ask you, ladies and gentlemen, to think about the
victim in this case. How many people were involved starting with Mr.
Gunnels all the way down to the officer in the final arrest? Think about
what they’ve had to endure just by being up here to tell you what
happened. Their lives are put on hold for this and all because of him,
this man right here. 
          I think it’s pretty clear that the only appropriate punishment
in this case is ten years in prison. It would be a travesty if it were
anything less. In fact, I wish it could be more. Send a statement to
him and send a statement to anybody who looks at this sentence in
the future by giving him ten years in prison and a $10,000 fine. 
When that Judgment is sent up, whoever is looking at that prison
sentence can see that a jury gave this man ten years and a $10,000
fine, that he received the maximum, and maybe they’ll take that into
consideration. Maybe it will tell him that when he gets out that he can’t
continue to do it again. Give him the maximum. 
          Maybe we’ll see him again. Maybe I’ll prosecute him again and
maybe not. It’s in your hands now. I’d ask you to remember all the
victims’ testimony and consider every potential victim in this county
and give him the maximum sentence. Thank you very much.
 
(Bolded are the prosecutor’s arguments to give the maximum; bolded and italicized
is the complained-of argument.)
          It is important to begin any analysis of whether the argument was capable of
being cured by an instruction to disregard with the likely effect the complained-of
argument would have had on an ordinary, reasonable juror. The prosecutor asked the
jurors to consider something important that the law did not allow him to explain; thus,
they should trust him on this, or, if they assessed less than 10 years, they would find
out later what was going to happen. What is a juror to make of this argument? Is this
the sort of argument that engenders trust in the prosecutor by jurors? Does this
argument inflame jurors? Or does it cause curiosity and bewilderment? Does the
argument seem to admit within itself that it is improper?
          Then, consider that defense counsel objected to the prosecutor’s argument as
being outside the record, and the trial court sustained the objection. What would
jurors conclude from that? Consider that this was not the first time during trial that
the jurors had observed objections and trial-court rulings. At the guilt phase of this
short trial, defense counsel objected three times, and the trial court sustained all three
objections and volunteered an instruction to the prosecutor not to lead after sustaining
one objection. At the guilt phase, the prosecutor objected seven times, the trial court
sustained four of the objections, and the trial court instructed defense counsel to
rephrase her question twice. At the punishment phase, defense counsel objected
seven times, and the trial court sustained five objections. Wouldn’t a reasonable
juror, having observed many objections sustained, with instructions given to counsel
on some occasions, conclude that the prosecutor had engaged in improper argument? 
Would a reasonable juror have been swayed by an argument that not only appeared
to be improper on its face, but which the trial court had deemed improper by
sustaining appellant’s objection?
          In determining the actual issue before us, of whether an instruction to disregard
could have cured any error, consider the following, possible instruction:
Ladies and Gentlemen of the Jury, you are instructed to totally disregard
the prosecutor’s argument urging you to assess no less than 10 years for
reasons the prosecutor admits he is not allowed to tell you. I instruct
you to disregard the argument and not to consider it for any purpose. 
It’s like parole and good-conduct time, which we discussed during jury
selection,


 and about which I instructed you in the jury charge,


 that you
are not to consider it for any reason in arriving at your verdict. What
you are to consider is the evidence that has been introduced throughout
the trial, and nothing else. Is there anyone on this jury who does not
understand that I am instructing you to disregard the prosecutor’s last
argument totally? Is there anyone on this jury who has even the slightest
doubt that he or she can obey my instruction to disregard? 
 
I submit that ordinary, reasonable jurors would have been able to obey such an
instruction by the trial court. Indeed, they are normally presumed to obey such an
instruction:
The adversary system thus depends upon a belief that the declaration of
a mistrial ought to be an exceedingly uncommon remedy for the residual
prejudice remaining after objections are sustained and curative
instructions given. For this reason, our system presumes that judicial
admonishments to the jury are efficacious. Only when it is apparent that
an objectionable event at trial is so emotionally inflammatory that
curative instructions are not likely to prevent the jury being unfairly
prejudiced against the defendant may a motion for mistrial be granted.
 
Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) (citations omitted).
          I acknowledge that such an instruction to disregard was not given in this case,
but whose fault is that? I submit that the error in this case lies in defense counsel’s
not requesting an instruction to disregard, which should have led the Panel Opinion
to decide the case on the second point of error, ineffective assistance of counsel.
          Instead of beginning with a determination of whether an instruction could have
cured any prejudice from the argument here, the Panel Opinion began with the
definition of what constitutes incurable argument. The Panel Opinion then attempted
to show how the argument here neatly matches each part of the definition of incurable
argument. The main difficulty is trying to demonstrate that the argument here is
inflammatory. To buttress its position, the Panel Opinion employs statements about
the dangerousness of speculation from a case in which the trial court overruled the
defense objection. See Everett v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). 
The Panel Opinion also includes a quotation from a case in which two defense
objections were overruled to support the proposition that arguments outside the
evidence are usually designed to arouse the passion and prejudices of the jury. See
Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). Of course, here, the trial
court sustained appellant’s objection.
          Examples of inflammatory arguments for which instructions to disregard were
sufficient to cure any prejudice are found in the very cases the Panel Opinion cites for
the general proposition of what constitutes incurable argument. See Long v. State,
823 S.W.2d 259, 267 (Tex. Crim. App. 1991) (holding instruction to disregard cured
prejudice from prosecutor using an Adolf Hitler analogy to show the accused was
evil); Logan v. State, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985). The Logan
case is particularly instructive because what happened in the Dallas Court of Appeals
seems to be what is happening in this case. A majority of the panel of the Dallas
Court of Appeals had apparently been particularly incensed by the prosecutor’s
conduct at trial. Despite a motion in limine ruling, which prohibited the prosecutor
from developing the fact that the accused and her alibi witness (both females) had had
a homosexual relationship, the prosecutor argued that the two had slept together for
five years. Id. at 681, 683. The Dallas Court of Appeals reversed even though an
instruction to disregard had been given. Id. at 681. The Court of Criminal Appeals
reversed the Court of Appeals, disagreeing that the only inference was that the two
were homosexual lovers, but holding that, even if that had been the only inference,
the argument was cured by the instruction to disregard. Id. at 683.
          Comparing the accused to Adolf Hitler and implying that the accused is
homosexual are good examples of inflammatory arguments. Another example is, “If
you find the defendant ‘Not Guilty,’ you will be signing the State’s witnesses’ death
warrants.” See Ganesan v. State, 45 S.W.3d 197, 206 (Tex. App.—Austin 2001, no
pet. h.) (holding any prejudice cured by instruction). An inflammatory argument fans
the flames of emotion to carry the jurors to an irrational verdict. All of the above
examples of inflammatory arguments, however, were cured by instructions to
disregard. This includes the very cases upon which the Panel Opinion relies for the
guiding principle in this area. From this, one may fairly infer that only an extremely
inflammatory argument is incapable of being cured by an instruction.
          It is noteworthy that the Panel Opinion cites no case that was reversed in
which, as here, the defense objection to argument was sustained, but no instruction
to disregard was requested. To the contrary, the cases it does cite for the general
proposition of what constitutes incurable argument held that an instruction to
disregard cured any prejudice from inflammatory arguments invoking Adolf Hitler
and homosexuality. Several adjectives come to mind to describe the prosecutor’s
argument in this case, such as bizarre, incongruous, or curious, but inflammatory,
much less extremely inflammatory, does not seem to fit. 
          To hold that the argument in this case was so inflammatory that it was
incapable of being cured by an instruction to disregard derogates the ability of trial
courts to formulate instructions to disregard prejudicial matters and the ability of
jurors to follow those instructions. As demonstrated, the Panel Opinion jumps from
the general proposition, over the very holdings of the cases its cites, to reach its
conclusion that the argument here was incurable. This is a reach too far.
Was the Error Constitutional?
          Having held that the error here did not have to be preserved by the usual
method, the Panel Opinion reviewed the error as constitutional error, even though
neither party had done so. There is sometimes a danger when appellate courts stray
from the arguments of the parties. It may give the appearance that judicial restraint
has been abandoned. Here, appellant’s brief claimed that the argument was improper,
not because it violated some constitutional principle, but because it was contrary to
black-letter law. The State’s brief also concluded that the error was not
constitutional, but other, error.
          Nevertheless, the Panel Opinion launched into its own analysis, seizing upon
potential exceptions from the only two cases in which the Court of Criminal Appeals
has addressed whether argument error is constitutional or other error, in both cases
holding that the improper arguments constituted other error. See Martinez v. State,
17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (noting that comments upon matters
outside the record generally do not raise unique concerns that would require assigning
constitutional status); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)
(noting that, even though of special concern, improper comments on defense
counsel’s honesty have never been held to amount to a constitutional violation). The
Panel Opinion spends nearly a fourth of its entire length trying to justify why the error
in this case is constitutional error, even though the parties analyzed it as other error.
          What is disconcerting about the Panel Opinion’s analysis is that it finds
constitutional error because the prosecutor argued outside the evidence (allegedly
implicating confrontation rights) unfairly (allegedly implicating due-process rights). 
I suggest that most improper arguments of prosecutors could be described similarly. 
Thus, contrary to the Court of Criminal Appeals’s opinions in Mosley and Martinez,
the Panel Opinion could be used as precedent to find argument error to be
constitutional as a general rule, rather than as the rare exception. Once again, the
Panel Opinion relies on cases holding the opposite of what the cases cited held as the
basis for its decision. The Panel Opinion utilizes slender exceptions, rather than the
holdings of the cases on which it relies, to reach its conclusion, another reach too far.
Reversing Without Destroying the Jurisprudence 
          There is an easier way to accomplish the same result—reversing the
case—without doing damage to the jurisprudence in the areas of both preservation
of argument error and harmless-error analysis. Appellant raised a second point of
error claiming that trial counsel was ineffective for not requesting an instruction to
disregard so as to preserve the argument error properly. If a majority of this Court is 
inflamed by the complained-of portion of the prosecutor’s argument so as to feel it
was that argument that caused the jury to assess a maximum sentence in this case,
then trial counsel was deficient in his representation for not having requested an
instruction to disregard, and appellant was harmed because it was the prosecutor’s
remark about something he could not explain that resulted in the maximum sentence.
Conclusion
          Because of the many times the prosecutor urged the maximum sentence based
on the evidence, I might have disagreed with a Panel Opinion that reversed this case
on the basis of ineffective assistance of counsel. I would not have requested en banc
consideration of this case over that disagreement on a judgment call, however. 
Because of the manner in which the Panel Opinion ventured into holdings
undermining well-settled principles of preservation and harm, I did request en banc
consideration. From the denial of that request, I respectfully dissent.
 
 
Tim Taft
Justice

Panel consists of Justices Hedges, Jennings, and Price.




En banc consideration was requested. Tex. R. App. P. 41.2(c).

A majority of the Court voted against en banc consideration of the panel’s decision. 

Justice Jennings concurring in the denial of en banc consideration.

Justice Taft, joined by Justice Nuchia, dissenting from the denial of en banc
consideration.

Justice Mirabal not participating.

Publish. Tex. R. App. P. 47.