# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00731-CR

**Juan Jose Rosa, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-11-0630, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Juan Jose Rosa was convicted of continuous sexual abuse of a young child and sentenced to eighty-five years' imprisonment. *See* Tex. Penal Code §§ 21.02 (if, during period of at least 30 days, person commits two or more acts of sexual abuse against child younger than 14 years of age, including indecency with child, person commits first-degree felony punishable by life imprisonment or term between 25 and 99 years), .11 (indecency with child includes touching genitals of child if committed with intent to arouse or gratify sexual desire of any person). Rosa appeals. We affirm the trial court's judgment.

## BACKGROUND

Appellant lived with his wife, Maria Nieto, and two of her daughters, Samantha and R.N., during the summer of 2010.[1] The outcry witness, Samantha, testified at trial that Maria's three granddaughters (Samantha's nieces) came over to their house at least every other week to practice for R.N.'s upcoming quinceanera. Samantha's nieces were each about six or seven years old at the time. Samantha further testified that late one night in July when her nieces were over for a sleep-over, she was in her room with them when two of them began "giggling" and telling her that the third niece, M.R., had a "secret." According to Samantha's testimony, M.R. began crying and hiding her head in a pillow as one of her cousins told Samantha that appellant "touches [M.R.'s] cookie." M.R. continued crying and finally told Samantha that appellant had been putting his fingers "in her private parts" when she sat on his lap, that sometimes it "would hurt," and that appellant touched her like this "every time" she came over for a visit.

Samantha immediately telephoned M.R.'s mother, Genesis Stedman, and informed her of M.R.'s outcry. Stedman then called the police, who responded and investigated the complaint that night. A few months later, a counselor with Roxanne's House[2] conducted a forensic interview of M.R., who was seven years old at the time.

---

[1] When witnesses and relevant persons in this case have the same surname, we refer to them by their first names for ease of identification. We use initials to refer to persons younger than 17 years of age.

[2] Roxanne's House is a child advocacy center within the Hays-Caldwell Women's Center that is authorized by law to provide forensic interviews of young children when there are allegations of sexual abuse.

M.R. was nine years old at the time of appellant's trial and testified that "every time" she visited her grandmother's house during the summer of 2010, appellant would put his hand inside her shorts and touch her "private parts" with his fingers when she sat on his lap. Maria testified that she spoke with M.R. the night of her outcry and believed that she was telling the truth. Maria also testified that she began questioning the veracity of the abuse allegations as she later spoke with appellant but that, at the time of trial, she still believed that appellant could have touched M.R.'s genitals but not "penetrated" her vagina.

Also testifying at trial were Deputy Amy Stacy, the law-enforcement officer who reported to Maria and appellant's home the night M.R. outcried; Melissa Rodriguez, a social worker and the program director of Roxanne's House; and Lenny Martinez, a peace officer with the criminal investigations division of the Hays County Sheriff's Office who was assigned to investigate the case. Martinez testified that he had watched M.R.'s forensic interview and learned therefrom that she claimed that appellant digitally penetrated her and had touched her private parts "40 times." The evidence at trial consisted entirely of verbal testimony; there was no physical evidence of the charged offense.

## DISCUSSION

In his first issue, appellant contends that the trial court erred in allowing the State to question Maria about an alleged hearsay statement not yet in evidence and then allowing inadmissible hearsay within hearsay from the outcry witness to establish the statement. Specifically, the State asked Maria, "Well, so if [M.R.] had said that you told her that if she was lying that [appellant] might go to jail and talk with the cops and the judge, then is that a lie, or did you say

3

something like that to her?" Appellant complains that the trial court permitted Maria to answer the question, over his objection that it was implying evidence not yet presented to the jury. Although the trial court permitted the question, it conditioned its admittance on its being later corroborated by M.R. or Samantha.

Appellant also objected to M.R.'s alleged statement as posed to Maria by the State on the basis of hearsay and asked for a running hearsay objection. Although the trial court did not expressly rule on appellant's hearsay objection or allow him a running objection, it did imply its agreement with the State that the statement in issue was not offered for the truth of the matter asserted (i.e., that appellant would go to jail if M.R. was lying) but to show that Maria had in fact made the statement to M.R.:

| Court: | Was that statement made by [M.R.], that is my question? |
|--------|---------------------------------------------------------|
| State: | According to the police reports that we have. |
| Court: | All right. |
| State: | That's what Samantha says that [M.R.] told her. |
| Court: | All right. If you have some evidence from some source on that, then we – and Samantha is going to be able to testify, she is the outcry witness, so . . . |
| State: | That's what she reported to the police at the scene. |
| Court: | If that's the case then – |
| State: | Yes. |
| Court: | – you are all right. |

The State then proceeded to question Maria about her alleged statement to M.R. that appellant would have to go to jail if she were lying. Appellant did not again object, and Maria answered the question.

4

M.R. never later testified to making the statement about Maria telling her that appellant would go to jail if she was lying, and appellant contends that the statement was impermissibly admitted as "hearsay within hearsay" by the outcry witness Samantha. Appellant complains that the trial court's error in permitting both the initial hearsay statement during Maria's testimony and the later corroboration of it by Samantha was prejudicial to him because it impeached Maria's credibility and implied that she was interfering with M.R.'s outcry on appellant's behalf.

The State responds that the complained-of statement was not hearsay because it was not offered to prove the truth of the matter asserted, *see* Tex. R. Evid. 801, but to impeach Maria by showing bias or interest towards appellant, *see id.* R. 613(b). Rule 613 places no limitations on the type of evidence that may be adduced to show a witness's bias or interest, and "the field of external circumstances from which probable bias or interest may be inferred is infinite." *Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd). We agree with the State.

In ruling on appellant's objection about the admissibility of M.R.'s alleged statement, the trial court was concerned not with whether it might be hearsay, but whether the State's allusion thereto would be later corroborated. Our review of the record leads us to conclude that the State did not offer M.R.'s statement to prove the truth of the matter asserted by Maria (that appellant would go to jail if M.R. was lying) but, rather, to prove that Maria in fact made the statement to M.R., perhaps with the intent to influence M.R.'s recollection of the events. *See Porter v. State*, 623 S.W.2d 374, 385 (Tex. Crim. App. 1981) (extra-judicial statement offered for purpose of showing what was said rather than for truth of matter stated therein does not constitute hearsay). Therefore, M.R.'s statement was not hearsay, and the trial court did not abuse its discretion in

5

admitting the challenged testimony. *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008) (admission of evidence reviewed for abuse of discretion, and trial court's ruling will be upheld if within zone of reasonable disagreement). Accordingly, we overrule appellant's first issue.

In his second issue, appellant complains that the trial court erred in denying his motion to dismiss an allegedly biased juror and overruling his request for use of an alternate juror after the challenged juror made an "improper" comment to the bailiff during a break in the punishment phase of the trial. During the break, the bailiff reported to the court that Juror 142 had just made a comment to him along the lines of, "Wasn't that magnificent. It's the best thing that happened all week." The bailiff said in reply to the juror, "I cannot comment on anything regarding the trial." During an in camera hearing, Juror 142 admitted that he had made the statement but did not elaborate much on what he meant by it, stating that "it had no merit" and that the statement was not about anything that would affect his ability to remain fair and impartial. Juror 142 further testified that his statement was not "referring to evidence at all" but that he made it just before the jury was dismissed for lunch, after that portion of the trial had ended "ironically" rather than the "typical" and "mainstream" way the trial had progressed.[3] Appellant asserts that the improper statement reflects that Juror 142 may have been biased against him, evidenced by his "evasiveness" in explaining what he meant, and that the trial court should have replaced him with an available alternate juror.

---

[3] Just before the lunch break, a character witness for the defense had testified. Cross examination of the witness revealed that he was a convicted and unregistered sex offender. Appellant challenges his defense counsel's effectiveness in calling this witness in a separate issue, addressed infra.

When considering whether a juror's "conversation" with someone about the case on trial prohibits the defendant from receiving a fair and impartial trial, courts focus their analysis on "whether the juror was biased as a result of the improper conversation." *Ocon v. State*, 284 S.W.3d 880, 887 (Tex. Crim. App. 2009); *see* Tex. Code Crim. Proc. art. 36.22 ("no person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court"). Also, where a juror's statements or conduct raise a question as to whether he is biased, "an inquiry is appropriate to determine the juror's intent when making the statement" to determine whether the juror is biased. *Granados v. State*, 85 S.W.3d 217, 236 (Tex. Crim. App. 2002). The appellate court reviews the trial court's decision after such inquiry in the light most favorable to its ruling and gives almost total deference to the trial court's resolution of issues turning upon an evaluation of credibility and demeanor. *Quinn v. State*, 958 S.W.2d 395, 402-03 (Tex. Crim. App. 1997).

"Bias" is defined as the inclination toward one side that leads to a natural inference that the decision-maker is not impartial, and disqualification based thereon is not ordinarily appropriate unless the bias stems from an extrajudicial source. *Id.* However, "it defies common sense and human nature to require that a juror have no impressions or opinions until the judge sends the jury to deliberations. Jurors must necessarily engage in at least some assessment of credibility and evaluation of the evidence as the proceedings occur." *Id.* at 403. "Opinions based upon evidence received in judicial proceedings do not ordinarily raise questions about impartiality." *Id.*

On this record, there is no evidence that Juror 142's alleged "bias" stemmed from an extrajudicial source or that his comment was anything more than an impression about the trial

7

proceedings that had just occurred before lunch. Viewing the evidence about the juror's statement and intent in the light most favorable to the trial court's ruling, we conclude that the trial court did not err in overruling appellant's motion to dismiss the juror. Accordingly, we overrule appellant's second issue.

Appellant contends in his third issue that the trial court erred by allowing two witnesses to testify in areas in which they were not qualified to testify: Deputy Stacy, the officer responding to Stedman's call the night of M.R.'s outcry, and Melissa Rodriguez, the director of Roxanne's House. The admissibility of evidence generally, and the qualifications of a witness to testify as an expert or as a lay witness, is within the discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion. *Harnett v. State*, 38 S.W.3d 650, 658-59 (Tex. App.—Austin 2000, pet. ref'd).

With respect to Deputy Stacy, appellant contends that she was a lay witness and not an expert witness, and that her testimony exceeded that permitted by the rules of evidence when she provided expert opinions about whether children can be coached to give detailed accounts of sexual abuse and whether they can be misled or manipulated in their accounts by family members. *See* Tex. R. Evid. 701 (lay witness's opinions or inferences must be rationally based on perception of witness and helpful to clear understanding of witness's testimony or determination of fact in issue). The State responds that Deputy Stacy was qualified to give both expert testimony and lay testimony, and that her expert qualification was based on her training. *See Harnett*, 38 S.W.3d at 658-59 (no rigid formula exists for determining whether witness is qualified to testify as expert, and social worker's

opinions and inferences were based on impressions and conclusions derived from both perceptions of what she saw, heard, and observed and her years of experience and training).

During voir dire, Deputy Stacy explained that she could answer the objected-to questions based on the training she received as a certified peace officer, which covered the topics of responding to child-abuse calls, sexual assault, family violence, and dealing with child victims, as well as the experience she had gained from responding to several child-abuse cases. A trial court may admit an expert's testimony under rule 702 if the testimony concerns some type of technical or specialized knowledge and would assist the jurors in their fact-finding function; special knowledge may be acquired by virtue of a witness's experience, training, or education. *Id.* Given Deputy Stacy's training and experience in the field in which she testified, we conclude that the trial court did not abuse its discretion in admitting her testimony over appellant's rule 702 objection.

With respect to Rodriguez, appellant contends that she also was not qualified to testify as an expert, specifically about the future psychological impact sexual abuse may have on children, because she was not a licensed counselor or psychologist and had not conducted any studies or published any papers. However, as already discussed, a witness may be qualified by virtue of her experience, training, or education, and "licensure, or certification in a particular discipline is not a per se requirement" to be an expert. *Id.* at 659. During the in camera hearing on Rodriguez's qualifications, she indicated that her field of expertise includes the "effects that child sexual abuse particularly has on children as they grow into adults." She had worked at Roxanne's House for nearly eleven years, personally conducted over 1,200 forensic interviews, and counseled both children and adult victims of sexual abuse over time as they worked through their experiences.

9

Additionally, her education and training covered the areas of sociology, counseling, and child abuse. On this record, we conclude that the trial court did not abuse its discretion in admitting Rodriguez's testimony over appellant's rule 702 objection. Accordingly, we overrule his third issue.

In his fourth issue appellant contends that the trial court erred in denying the motion for continuance he filed to accommodate his expert witness's availability to testify. He alleged in his motion that (a) his expert had been on vacation just prior to trial and therefore did not have adequate time to prepare her evaluations and (b) that she would be testifying in a different trial in another county during one of the first two days of trial in his case and therefore he was unable to avail himself of her essential testimony, which harmed his defense and right to a fair trial. We review the trial court's ruling on the motion for continuance for an abuse of discretion, which is demonstrated by a showing that the defendant was actually prejudiced by the denial of his motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). Examples of specific prejudice are allegations of unfair surprise, inability to effectively cross-examine any of the State's witnesses, or demonstrating that crucial testimony would have been given by a potential witness. *Id.*

A defendant who files a motion for continuance based on an absent witness must demonstrate that (1) he exercised reasonable diligence to procure the witness's attendance, (2) the witness is not absent by the procurement or consent of the defense, and (3) the motion is not made for delay. *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005). Additionally, the defendant must show the facts expected to be proved by the witness, which must be material, and "[m]ere conclusions and general averments are not sufficient for the court to determine [the facts'] materiality." *Id.*

10

Appellant did not preserve error on the trial court's denial of his motion for continuance because there is nothing in the record showing the specific facts he expected his expert witness to prove or supporting the requirement that her testimony would have been material. *See Hubbard v. State*, 912 S.W.2d 842, 843 (Tex. App.—Houston [14th Dist.] 1995, no pet.). Accordingly, appellant has not made any showing of actual prejudice, and we overrule his fourth issue.

In his fifth issue, appellant alleges that he was rendered ineffective assistance of counsel in the punishment phase of the trial when his counsel allegedly failed to run a criminal background check on a character witness prior to calling the witness to testify. The witness whom defense counsel called to testify was a neighbor of appellant who himself was a convicted sex offender and had not updated his registration as required by law. Appellant argues that the neighbor's testimony "severely prejudiced" him against receiving a lower sentence.

In reviewing counsel's performance, we presume that counsel makes all significant decisions in the exercise of reasonable judgment. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Appellant has the burden to bring forth a record that affirmatively demonstrates the alleged ineffectiveness of his counsel by a preponderance of the evidence. *See Scheanette v. State*, 144 S.W.3d 503, 509-10 (Tex. Crim. App. 2004). Performance of counsel usually cannot be adequately examined based on a trial-court record; this type of record is best developed in a motion for new trial. *See id.* Without a fully developed record, finding counsel constitutionally ineffective would require us to assume that there was no sound trial strategy, which we are not permitted to do

unless the counsel's decision was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Although appellant filed a motion for new trial, he did not raise this issue in that motion, and his defense counsel was not afforded an opportunity to explain his complained-of decision. In fact, appellant's allegation that defense counsel failed to run a background check on the character witness is mere speculation and is not verifiable on this record. Additionally, even assuming defense counsel did so fail, we cannot conclude that such omission was categorically and unreasonably "outrageous." On this record, we cannot conclude that appellant received ineffective assistance of counsel, and we therefore overrule his fifth issue.

Lastly, appellant asserts that the trial court erred in allowing the State to make an "improper reference" to his immigration status and negative comments about his wife during its opening argument in the guilt-innocence phase of trial. Specifically, appellant complains of the following statements: "You see, [Maria]'s the type of woman who chooses whatever man is in her life over the well-being of her family. She met this defendant, who was 33 years old, 21 years younger than her, at a nightclub and she married him and even though she knew he was married back in his home of Guatemala, she went ahead and started citizenship paperwork for him." He claims that the statement prejudiced the jury against him and unfairly impeached him by "maligning" Maria, which harm was exacerbated by Stedman's testimony.[4]

---

[4] Appellant cites Stedman's testimony about the number of Maria's former romantic partners and the age difference between appellant and Maria as further "maligning" her character but does not raise the issue of the testimony's admissibility. However, even if he did raise the issue and assuming he preserved error, we would conclude that the trial court's admission of the testimony was within the zone of reasonable disagreement and not an abuse of discretion. *See McCarty v. State*,

Appellant objected to the State's argument on the basis of relevance, and the trial court sustained the objection. However, appellant did not request an instruction to disregard, which is the appropriate remedy for improper argument and a requirement to preserve the error on appeal, unless the error is "incurable." *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998); *see also Logan v. State*, 698 S.W.2d 680, 682 (Tex. Crim. App. 1985) (jury argument is incurable if it is extreme or manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and is so inflammatory that its prejudicial effect cannot reasonably be cured by instruction to disregard). We conclude that the alleged erroneous jury argument was not so inflammatory that any prejudicial effect could not have been cured by an instruction to disregard. Because appellant did not preserve the error by requesting an instruction to disregard, he cannot complain of the argument on appeal. We overrule appellant's sixth issue.

## CONCLUSION

Having overruled all six of appellant's issues, we affirm the trial court's judgment of conviction and sentence.

---

257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

13

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed:   March 11, 2014

Do Not Publish