James H. BENNETT aka Charles W. Bennett, Appellant,

v.

STATE of Texas, Appellee.

Nos. C14–82–686CR to C14–82–689CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 1984.

William Burge, Houston, for appellant.

Calvin A. Hartmann, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

Appellant was charged in six indictments, five for the offense of Aggravated Sexual Abuse of a Child pursuant to TEX. PENAL CODE ANN. § 21.05 (Vernon Supp.1982–1983) and one for the offense of

Indecency with a Child pursuant to TEX. PENAL CODE ANN. § 21.11 (Vernon Supp.1982–1983). By agreement the indictments were tried together.

During trial the court granted the state's motion to dismiss one charge of Aggravated Sexual Abuse, and a jury acquitted appellant of the offense of Indecency with a Child. The jury found appellant guilty of the four remaining charges of Aggravated Sexual Abuse and assessed punishment at five years confinement in the Texas Department of Corrections and a $10,000 fine for each of the four offenses. The court ordered that the sentences run concurrently.

We reverse and remand.

Appellant was in the habit of befriending young boys, buying them gifts of toys and clothes and taking them on various outings both in and out of town. Six complaining witnesses testified. Four of them were eleven years old; one was twelve; and one was six years old. Most of these witnesses had spent a great deal of time at appellant's house and sometimes spent the night there. At least one of the boys kept clothes there. All four of the eleven-year-old boys testified that appellant performed acts of oral sex upon them. In one incident, notable for its details, the witness testified that after bathing at appellant's house, appellant dried and powdered him before performing the act of oral sex. One witness testified that appellant fondled him while he was clothed.

The six-year-old witness did not provide sufficient testimony to prove aggravated sexual abuse of that child by appellant, as he testified only to being fondled by appellant and not to having had oral sex performed upon him as charged in the indictment. Appellant moved for an instructed verdict on that charge; however, the trial court granted the state's motion to dismiss due to a fatal variance between the proof and the indictment. The trial court instructed the jury not to consider the testimony of the six-year-old for any purpose. During the course of the trial the prosecutor admitted he had known in advance that the six-year-old's testimony would be insufficient to support a charge of aggravated sexual abuse but claimed he had acted in good faith as he felt the court would sustain a request to instruct the jury on the lesser included offense of indecency with a child. The prosecutor further admitted that he included the six-year-old's testimony, at least in part, for the emotional impact it would have on the jury.

Appellant presents seven grounds of error. Our disposition of grounds of error three, four, and five and this court's belief that the situations detailed in the remaining grounds would not be likely to occur during another trial make a discussion of grounds of error one, two, six, and seven unnecessary.

Grounds of error three, four, and five all allege prosecutorial misconduct. Due to the gravity of the issues raised in grounds of error four and five, we will discuss those two grounds first.

In ground of error four appellant alleges reversible error in that the trial court overruled objection to and failed to grant a mistrial based on prosecutorial comments during the punishment phase which called for the jury to consider extraneous offenses in its assessment of punishment. The repeated references to extraneous offenses included references both to the stricken testimony of the six-year-old and to incidents between appellant and the other complainants on dates other than the dates charged in the indictments for which appellant was being tried.

The record reflects the following argument by the state's attorney during the punishment stage:

MR. KYLES [THE PROSECUTOR]: ... We're talking about four victims. We're talking about at least one little boy who said it happened to me [sic] no less than eighteen times.

MR. SPARKS [DEFENSE ATTORNEY]: I would object to the prosecutor's argument concerning extraneous offenses.

THE COURT: Overruled.

MR. KYLES: Multiply five times eighteen, ladies and gentlemen. Each time, ladies and gentlemen, you realize that these boys probably went closer and closer—

MR. SPARKS: I would object to multiply [sic] five times eighteen. Number one, because there are four children, and not five; secondly, because it's also an attempt by the prosecutor to ask the jury to consider extraneous offenses in assessing punishment.

THE COURT: Sustained as to that comment.

After the court's instruction to the jury to disregard the last comment and its denial of appellant's motion for mistrial, the prosecutor later continued his efforts to bring extraneous offenses before the jury for consideration in assessing punishment:

MR. KYLES: ... He didn't do that one time, ladies and gentlemen. He didn't do that on one occasion, ladies and gentlemen. He did that to four people over several months.

MR. SPARKS: I would object. He is asking the jury to consider extraneous matters on which the jury has heard no testimony. It is improper at the punishment stage of the trial.

THE COURT: Sustained. The jury is to disregard.

 The court of criminal appeals has consistently held that it is improper for state's counsel to introduce extraneous offenses to the jury for consideration in assessing punishment. An accused is to be punished only for the accusations in the indictment of which he has been found guilty. *Klueppel v. State*, 505 S.W.2d 572, 574 (Tex.Crim.App.1974), *Walls v. State*, 548 S.W.2d 38, 41 (Tex.Crim.App.1977), *Brown v. State*, 530 S.W.2d 118, 119 (Tex. Crim.App.1975).

 A prosecutor may ask the jury to consider facts and circumstances surrounding an offense in determining guilt or innocence. *Klueppel v. State, supra* at 574. However, the prosecutor in the instant case went beyond those bounds and impermissi-

bly referred to extraneous offenses during the punishment phase. While references to extraneous offenses to prove a continuing plan or scheme may be admissible during the guilt-innocence stage, *See Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972), such references are impermissible during the punishment phase. Appellant's fourth ground of error is sustained.

 Appellant's fifth ground alleges error in the trial court's denial of a mistrial due to prosecutorial misconduct in introducing matters outside the record by speculative references suggesting appellant's conduct could have the effect of turning the complainants into homosexuals. The prosecutor's references to matters not introduced into evidence were even more numerous than his references to extraneous offenses. Considered individually, the prosecutor's remarks might seem harmless, but when considered in the total context, the harmful implications become apparent. Challenged remarks must be evaluated in light of the entire trial. *Brown v. Estelle*, 468 F.Supp. 42, 45 (N.D.Tex.1978). A few examples of his conduct during the punishment argument are set forth below:

MR. KYLES: A boy fourteen years of age has not married. He has not developed a family. He has not established his status in life as Mr. Bennett has. A boy of that age is in the position to suffer many long-term effects on his life.

MR. SPARKS: There is no testimony to support that. That argument is outside the record.

THE COURT: Sustained. Stay within the record.

MR. KYLES: This kind of offense, ladies and gentlemen, can affect and certainly has affected several people.

MR. SPARKS: I would object. It's outside the record. The prosecutor is testifying before the jury.

MR. KYLES: I believe that is a logical deduction from the evidence.

THE COURT: Sustained.

The jury was instructed to disregard but appellant's motion for a mistrial was de-

nied. The prosecutor proceeded in the same vein:

MR. KYLES: You know that young boys are very impressionable. A young boy has not developed his sexuality. He has not developed his complete self-esteem. You know that he may be hurt. You know that the foundation upon which his future relationships with people depend is not completely formed. You know that his ability to enter into heterosexual relationships which would be successfully fulfilled, the potential of that relationship is basically founded on what happens to him during his formative age.

MR. SPARKS: There is no testimony to support that. It's outside the record.

THE COURT: Overruled.

MR. KYLES: ... It is my contention, ladies and gentlemen, that Jim Bennett set out on a diabolic plan to snare in little boys and take advantage of them, not knowing which kid might be the eggshell victim, which child may have the sort of psyche which might develop a problem as a result of his habitual—

MR. SPARKS: I would object to this as being speculation on the part of the prosecutor. These are his conclusions that he is drawing, his personal testimony.

THE COURT: Sustained as to the personal opinion of the prosecutor. Do not give your personal opinion to the jury.

Turning a deaf ear to the court's instruction not to give his personal opinion, the prosecutor, after a brief respite, continued:

MR. KYLES: The list is endless in regard to what the potential effects might be on those young men. You realize that.

MR. SPARKS: Objection. We're getting back into the personal opinion of the prosecutor. There is no testimony to support that particular aspect.

THE COURT: Overruled.

MR. KYLES: You realize that there is no showing of exactly when homosexual conduct first comes into being and—

MR. SPARKS: I would object to this argument of the prosecutor. There is no testimony to support it. It is a personal opinion of the prosecutor. He is arguing outside the record and giving his personal opinion.

THE COURT: Sustained. Stay within the record.

There were other remarks by the prosecutor regarding the potential effect of appellant's behavior on the boys involved. Objections by appellant to these remarks were overruled by the trial judge. The court of criminal appeals in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973), summarizes the proper boundaries of jury arguments:

To receive the stamp of approval of this court, jury arguments need to be within the areas of: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. (citations omitted).

*Id.* at 231. *See also Campbell v. State*, 610 S.W.2d 754 (Tex.Crim.App.1980). An examination of the prosecutor's argument in view of the total record before us reveals his remarks exceed the limits set forth in the above four categories.

The record reveals no evidence regarding any kind of long-term effect on these boys. Just as there was no evidence in *Nicklas v. State*, 530 S.W.2d 537 (Tex.Crim.App.1975) to show a relationship between exposure to sexual materials and the commission of sex crimes, there is no evidence in the record of the instant case regarding a causal connection between the crimes of which appellant has been convicted and the victims of those crimes becoming homosexuals.

While the role of the prosecutor is to persuade the jury to convict, these statements by him were clearly speculative and were calculated to inflame and prejudice them against appellant. They were outside the record and expressions of personal

opinion. According to the court of criminal appeals,

> The purpose of a closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may 'arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted into evidence. Nor should resort be had in argument to arouse the passion or prejudice of the jury by matters not properly before them.'

*Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App.1980) (citing *Stearn v. State,* 487 S.W.2d 734 (Tex.Crim.App. 1972)).

During the twenty-two page record of the prosecutor's oral argument at the punishment phase of the trial, there were a total of twenty-four objections by appellant. Two objections were to references to extraneous offenses, eleven were to matters outside the record, and eleven were to the prosecutor's personal opinions. Thirteen of those objections were sustained by the court and eleven overruled. While some of the statements objected to might have been proper during the guilt-innocence stage of the trial, most were clearly improper during the punishment phase. Based upon the number and seriousness of the prosecutor's improper remarks, we sustain appellant's fifth ground of error.

■ In his third ground appellant urges reversible error in the trial court's overruling his objection to a portion of the prosecutor's argument during the guilt-innocence stage of the trial. In that portion the prosecutor referred to and explained the reasons for the disposition of another case. We sustain this ground of error.

Appellant was originally charged with a fifth count of aggravated sexual abuse of a child. The trial court granted the state's motion to dismiss that case and instructed the jury not to consider that testimony for any purpose. During final argument at the guilt-innocence stage, the prosecutor nevertheless made several references to that fifth, dismissed charge:

> MR. KYLES: ... You may recall both the judge and Defense counsel pointed out that a portion of the testimony relating to J _____ H _____ (the six-year-old) has been stricken. You are not to consider that in regard to the guilt or innocence. Why? Because after you left the courtroom, the State ultimately dismissed the case. Think back to the testimony of C _____ W _____. Ladies and gentlemen, think back to the original reading of all the indictments. Think back to my representation to you about there being five individual sex abuse cases and one indecency with a child. C _____ W _____ was an indecency with a child case as you may recall, and J _____ H _____'s testimony related to an indecency with a child case.

MR. SPARKS: I would object to this. His testimony has been struck and the jury has been instructed not to consider it.

THE COURT: Sustained. Let's proceed.

Undaunted by the court's instructions, the prosecutor continued:

MR. KYLES: I am not asking you to consider J _____ H _____'s testimony at this time. I am indicating to you the basis of the dismissal, and so you will understand that I have not attempted to use any improper tactics. The indictment stated one thing and the testimony stated another. It was inappropriate to proceed any further.

MR. SPARKS: Any explanation by the prosecutor is outside the record. We would object.

THE COURT: Stay within the record.

MR. SPARKS: Is my objection sustained?

THE COURT: That objection is overruled. Let's move forward.

MR. KYLES: ... However, ladies and gentlemen, there is one thing that you can consider and that is the facts that you know, that the man seated before you has been accused by five separate persons of committing a sexual offense against boys.

MR. SPARKS: That is an indirect reference requesting the jury to violate the Court's instructions that they are not to consider the testimony of—

THE COURT: Your objection is overruled.

MR. KYLES: ... Ladies and Gentlemen ... your verdict is going to be based on whether or not you believe the testimony of those five boys.

■ It has long been the rule in Texas that when a court withdraws testimony from a jury, the case stands as though that testimony had never been introduced. For the prosecutor to allude to this testimony in argument is tantamount to bringing before the jury unsworn testimony which is not properly before them and which can be harmful and prejudicial. *See Fletcher v. State*, 141 Tex.Crim. 26, 147 S.W.2d 233, 242 (1941).

■ Prosecutors should confine themselves to a discussion of matters properly in evidence and not parade before the jury evidence which the court has previously excluded. *Canova v. State*, 151 Tex.Crim. 252, 207 S.W.2d 404, 406 (Tex.Crim.App. 1947). Counsel should not employ innuendo to refer to matters not properly before the jury. *Hodge v. State*, 488 S.W.2d 779, 782 (Tex.Crim.App.1972). A prosecutor should not use closing argument to get before the jury evidence which is outside the record and prejudicial to the accused. *Jackson v. State*, 529 S.W.2d 544, 546 (Tex. Crim.App.1975). Clearly, it was improper for the prosecutor to mention, for any reason, the dismissed charge, which the court had stated was not to be considered for any purpose.

It cannot be said beyond a reasonable doubt that appellant was not harmed. The prosecutor's argument was deliberately peppered with improper remarks to which defense counsel repeatedly objected, and about which the prosecutor was admonished numerous times. Even though the punishment appellant received fell far short of the fifty years the prosecutor requested, no reasonable person could argue that the prosecutor's conduct was not harmful. It is clear that the jury did consider awarding probation, and the punishment assessed, five years confinement, was the minimum number of years of confinement permitted by statute for a first degree felony; however, the prejudicial and inflammatory effect of the prosecutor's remarks cannot be automatically negated, nor can the cumulative effect of such remarks necessarily be cured, by the court's instructions to disregard.

The jury's consideration of the possibility of probation was evidenced during jury deliberations by a note from them to the court. In it they asked if the court could make assurances that if probation were granted, certain conditions would be included. The two conditions the jury wished to be assured of were (1) that appellant avoid the company of boys younger than 17, except his grandchildren, and (2) that appellant be required to attend the Baylor Sex Abuse Clinic until declared rehabilitated. The court responded it was not permitted to answer the jury's question.

Appellant had filed a timely motion for probation, and the jury instructions contained the usual details regarding probation. Additionally, the defense attorney's argument during the punishment stage was geared entirely towards convincing the jury to award probation and rehabilitation for appellant. Testimony during both phases of the trial brought out numerous salient points in favor of granting probation.

During both the guilt-innocence phase and the punishment phase, the jury heard testimony regarding appellant's impeccable reputation prior to these charges. The 64-year-old appellant had had no previous convictions, probations, or arrests (other than traffic violations) during the first 63 years of his life. He was party to no incidents of force, violence, or harm. The jury heard testimony that appellant is responsible for supporting his 91-year-old mother and a 67-year-old brother who, because of brain damage at birth, is confined to a nursing home. During the punishment phase, the defense presented Charles Noble, an adult

probation officer, who testified about the Baylor Sex Abuse Program, a rehabilitation program for probationers. The thrust of his testimony was that appellant would be appropriate for the program were he placed on probation.

The defense brought in numerous character witnesses to testify on appellant's behalf, including family members, long-time friends, business associates and other children whom appellant had befriended, as well as their parents. Appellant's three sons, James Jr., Charles, and David Bennett, and his stepson, Vance Barnes, all of whom appellant raised, testified that appellant had always taken an enormous interest in children and had willingly and devotedly taken on the responsibility of raising the four of them after his divorce from their mother. Others whom appellant had befriended when they were children testified, including a boyhood friend of David Bennett's and the son of a woman who had dated appellant. There was also testimony from boys whom appellant had befriended more recently, including children from the neighborhood and two brothers who had met appellant when he was a volunteer at the Depelchin Faith Home, (a residential facility for children whose families are without resources). Mr. Bennett had even provided his home as a residence for the two brothers for a period of time. All these witnesses testified that appellant had always liked to help boys and their families and that they had never been subjected to, nor had they ever witnessed or heard of, any type of sexual misconduct by appellant. The parents of some of these children appeared in court supporting their children's testimony and declared their trust in appellant and their knowledge of his general good reputation in the community. Several other character witnesses, including business associates and friends of appellant, testified about appellant's good reputation.

■ In light of all this testimony as to appellant's good reputation, combined with appellant's advanced age and the fact that appellant is the sole support of two elderly dependents, we cannot say that the net effect of the prosecutor's consistent disregard of the trial court's admonishments to stay within the record had no harmful effect on the jury's decision not to recommend probation.

■ We note, as has the court of criminal appeals, the growing tendency of prosecutors to go outside the record in jury argument and then, predictably, to submit on appeal that such was, at most, harmless error. *Stearn v. State, supra* at 736. However, the burden of demonstrating that argument was harmless belongs to the state and it must be proved harmless beyond a reasonable doubt. *See Klueppel v. State, supra* at 574. We hold in the instant case the state did not prove beyond a reasonable doubt that the prosecutor's argument was harmless. Some prosecutors have said it is the job of a prosecutor to rile up the members of the jury, to stir their emotions. Certainly he has both the right and obligation to attempt to persuade the jury in order to obtain a conviction he feels is merited. However, it is the task of this court as well as that of the prosecutor and the trial judge to ensure that any defendant receives a fair and impartial trial, no matter what the nature of the crime or how overwhelming the evidence of guilt may be. The Texas Court of Criminal Appeals has clearly stated the boundaries of argument. The boundaries established in *Alejandro v. State, supra,* were exceeded in appellant's trial. While we recognize the charged atmosphere in which a trial of this nature is conducted, we cannot condone the actions of a prosecutor, who despite repeated, though ineffectual admonishments by the trial court, continues to place clearly impermissible matters before the jury. It is crucial that an accused be convicted only upon the evidence presented without the prosecutor attempting to inflame or prejudice the minds of the jurors. *Stein v. State,* 492 S.W.2d 548, 551 (Tex.Crim.App. 1973).

■ We also note that a trial judge must realize the harmful effect of this sort of situation upon a jury of twelve impres-

sionable people. A prosecutor's repeated and conscious indifference to the basic principles of proper jury argument cannot be cured by a one-sentence instruction to disregard. *See Boyde v. State,* 513 S.W.2d 588 (Tex.Crim.App.1974). We recognize that declaring a mistrial in the final stages of a trial involving eight days of testimony, close to fifty witnesses, and fourteen exhibits, would have been a harsh remedy, especially since the improper remarks were limited to the final arguments. However, trial courts should assume the responsibility of preventing this type of argument. It would have been a simple task for the court in the instant case to have taken a few moments to conduct a conference with the prosecutor at the bench. In the alternative, it could have called a brief recess and held an in-chambers conference, during which the trial judge could have in no uncertain terms warned the prosecutor that further manifestly improper remarks would result in the prosecutor being held in contempt of court and declaration of a mistrial. The court of criminal appeals in *Bray v. State,* 478 S.W.2d 89, 90 (Tex.Crim. App.1972), goes a step further and urges a rebuke by the trial court in the presence of the jury as a measure that could do more to stop improper behavior by counsel than repeated admonitions or even reversals by appellate courts.

The Texas Supreme Court has held that where a trial court rules a certain line of argument improper but an attorney persists in pursuing it, then the court acts within its jurisdiction in sentencing the attorney for contempt of court. *Ex parte Fisher,* 146 Tex. 328, 206 S.W.2d 1000 (1947). In the instant case either a private or public warning by the judge would have put the prosecutor on notice of the gravity of his "prosecutor overkill."

 While we regret the loss of time and expense engendered by our holding, when any doubt exists in the mind of a court as to the fairness or impartiality of a trial, it is duty bound to award a new trial. *Ruth v. State,* 522 S.W.2d 517 (Tex.Crim. App.1975).

We sustain grounds of error three, four, and five; we have considered the other four grounds of error but need not address them.

Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial.