NOS. 12-02-00025-CR


 12-02-00026-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


FRANCIS BROWN, JR.,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Francis Brown, Jr. ("Appellant") appeals his convictions for aggravated sexual assault of a
child and indecency with a child. Appellant presents six issues on appeal. We affirm.


Background

 Appellant was married to Leslie Brown ("Leslie"). Before that marriage, Leslie had a child,
Marlyn Stewart ("Marlyn"). Marlyn is married to Robert Stewart ("Robert") and has a child by a
former marriage, Jenifer West ("Jenifer"). Jenifer has a son, J.W. On February 1, 2001, Appellant
was charged by indictment with indecency with J.W. (1) The indictment stated that on or about
December 28, 1999, Appellant, with the intent to arouse or gratify the sexual desire of himself,
intentionally or knowingly, engaged in sexual contact with J.W., by touching the genitals of J.W.,
a child younger than seventeen years of age and not the spouse of Appellant. 

 On June 21, 2001, Appellant was charged by indictment with aggravated sexual assault of
a child, J.W. (2) The indictment stated that on or about November 1, 1999, Appellant, intentionally or
knowingly, caused the penetration of the mouth of J.W., a child who was then younger than fourteen
years of age and not the spouse of Appellant, by the Appellant's sexual organ. Further, the
indictment stated that on or about November 8, 1999, Appellant, intentionally or knowingly, caused
the mouth of Appellant to contact the male sexual organ of J.W., a child who was then younger than
fourteen years of age and not the spouse of Appellant. Appellant pleaded not guilty and a jury trial
began on November 12, 2001.

 Marlyn testified that, in January or February of 1999, she and Robert were taking care of J.W.
(the "first incident"). After a shower, Robert, dressed in his boxer shorts, joined Marlyn and J.W.
watching television on Robert and Marlyn's bed. As Robert turned on his side on the bed, his "penis
came out of the flap of his boxers, and [J.W.] reached down and grabbed it and started playing with
it." According to Marlyn, Robert slapped J.W.'s hand and asked him what he was doing. J.W.
explained that his "other papa lets me do it." Marlyn asked J.W. what he meant, and J.W. stated that
"[m]y papa lets me pull him off." At Marlyn's request to show her what he meant, J.W. performed
the motions of masturbation. Marlyn testified that J.W.'s "other papa" or "papa" is Appellant. As
a result of this incident, Marlyn contacted the Child Protective Services ("CPS") hotline, but never
heard from the agency. Marlyn testified that she never followed up her call to CPS because she was
in denial. Further, she forgot about it and "blew it off." Moreover, she never confronted Appellant
regarding this incident.

 In the summer of 1999, J.W. was between four and five years of age and was living with
Marlyn and Robert. Jenifer kept J.W. for a few days during his school vacations at Thanksgiving and
Christmas. At this time, Jenifer was living with Appellant. After the two vacations at Appellant's
house, J.W. became uncontrollable, refused to mind, and was very angry. After Marlyn specifically
asked J.W. about his holiday vacations, J.W. told her that, during the Christmas holiday, Appellant
touched him, made him put his mouth on Appellant's penis (or his "number one"), and made him
sleep with Appellant (the "second incident"). Marlyn told J.W.'s teacher that she believed Appellant
had molested J.W. and that she needed the teacher's help to watch J.W. for anger and signs of
distress.

 When she arrived to pick up J.W. one day, Marlyn learned that the school had contacted CPS.
After the CPS investigator, Crystal Campbell ("Campbell"), spoke to her, Marlyn gave a written
statement regarding what happened to J.W. She also gave a statement to police on April 20, 2000,
in which she described the first incident between Robert and J.W., but did not relate the second
incident. Marlyn gave another statement on June 13, 2001. This second statement was more
thorough regarding what J.W. told her, and contained information about the second incident. Prior
to her second statement, Marlyn never reviewed her first statement and never told law enforcement
or the district attorney's office that she failed to include J.W.'s account of the second incident in that
statement. However, Marlyn testified that she mentioned the second incident when she first related
what happened to J.W.

 J.W. identified Appellant as the "one that made me talk to the police . . . by doing bad stuff
to me." J.W. also stated that he used to call Appellant "papa" and that he had two papas. J.W.
believed he lived with Appellant when he was five or six years old. While living with him,
Appellant touched J.W.'s "private parts," and the incidents always occurred in Appellant's bedroom.
J.W. testified that Appellant touched his "front privates" with his hands more than once, and with
his mouth once. Appellant made J.W. touch his "front privates" with his hands and with his mouth
once. At the time of the occurrences, it was both hot and cold outside.

 J.W. stated that he told his nanna, Marlyn, after telling his papa, Robert, what had occurred.
According to J.W., he never visited Appellant again. When describing Appellant's bedroom, J.W.
stated that it did not have a door on it, but that he could access the bathroom from Appellant's
bedroom. When he stayed at Appellant's house, J.W. slept on the couch. The couch had a "country
look" with, according to his description, covered wagons. The couch had cushions that he hid
behind, beginning the first time Appellant touched him. 

 J.W. remembered talking to Campbell. Although Campbell asked if Appellant had ever
asked him to put his mouth on Appellant's penis, he said "no" on the tape recording. At trial, J.W.
testified that Appellant asked him to put his mouth on Appellant's penis, and made him do it by
pushing his head down. However, Appellant never asked J.W. if he could push his head down.
Further, Appellant put his mouth on J.W.'s "privates" once. Appellant never asked J.W., but just
"went down." When that happened, J.W. stated that he felt bad.

 Campbell, an investigator for CPS for four years, investigates sexual abuse of children and 
offices in the Children's Advocacy Center ("CAC"). She spoke to J.W. at the school after CPS was
contacted by a school counselor. At that time, J.W. was in kindergarten and, she believes, five years
old. Campbell's interview with J.W. was tape recorded. During this interview, she asked J.W. if
Appellant "had ever asked him to suck his penis." J.W. said "no," and when she repeated the
question, J.W. again said "no." She recalled J.W. stated that Appellant touched his "private parts"
and that is all Appellant did. However, Campbell agreed that a person can touch a "private part"
with a hand and a mouth.

 As a result of her investigation, Campbell had an opportunity to tour Appellant's house. 
From her discussions with J.W., she was able to match his descriptions with what she saw at
Appellant's house. In a second videotaped interview over a year later, she asked J.W. if Appellant
had asked him to suck his penis. J.W. then stated that he did, in fact, perform oral sex on Appellant.
J.W. explained that he said "no" to the same question in the tape-recorded interview because
Appellant did not ask him to suck his penis, but pushed his head down.

 Detective Peggy Ann Scott ("Scott") is a detective with the Smith County Sheriff's
Department and responsible for investigating crimes against children. Scott was the investigating
officer regarding allegations of abuse against J.W. and the officer who took Marlyn's first statement.
Before Marlyn began to write the statement, Scott advised Marlyn to write what they had discussed.
During their conversation, Marlyn never informed Scott about the allegations relating to the second
incident.

 Mary Kathy Gilmore ("Gilmore") is Appellant's daughter. She knows J.W. and stated that
he lived at Appellant's house. She is familiar with Appellant's house and furnishings. Gilmore
stated that Appellant had a couch and love seat in his living room. She testified that the love seat
was brown with cream-colored flowers, and the seat cushions were removable. However, the
couch's back cushions were attached. She testified that these cushions were not the kind that one
can climb or hide behind. Gilmore stated that there was no bathroom in Appellant's bedroom.

 On November 14, 2001, the jury found Appellant guilty of indecency with a child, a second
degree felony, and aggravated sexual assault of a child, a first degree felony, as charged in the
indictments. The jury assessed punishment at imprisonment for eleven years and a fine of $5,000
for indecency with a child. Further, the jury assessed punishment at imprisonment for twenty years
and a fine of $5,000 for the offense of aggravated sexual assault of a child. This appeal followed.


Competency of Child Witness

 In his fourth issue, Appellant contends that the court erred in allowing J.W. to testify because
he was not competent. The State disagrees and contends that Appellant waived any error when he
failed to object to J.W.'s competency at trial.

 The Texas Rules of Evidence state that every person is competent to be a witness except
"[c]hildren or other persons who, after being examined by the court, appear not to possess sufficient
intellect to relate transactions with respect to which they are interrogated." Tex. R. Evid. 601(a)(2).
This rule creates a presumption that a person is competent to testify. Reyna v. State, 797 S.W.2d
189, 191 (Tex. App.-Corpus Christi 1990, no pet.); Rodriguez v. State, 772 S.W.2d 167, 170 (Tex.
App.-Houston [14th Dist.] 1989, pet. ref'd). The competency of a witness is for the trial court to
resolve and, upon review, a ruling by the trial court will not be disturbed on appeal unless an abuse
of discretion can be shown. Watson v. State, 596 S.W.2d 867, 871 (Tex. Crim. App. [Panel Op.]
1980); Clark v. State, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977). In determining whether there
has been an abuse of discretion, an appellate court must review the entire testimony of a witness in
addition to a preliminary competency examination. Clark, 558 S.W.2d at 890; Reyna, 797 S.W.2d
at 191. 

 However, in order to present an issue for appellate review, the record must show that a
complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P.
33.1(a)(1). The request, objection, or motion must state the grounds for the ruling that the
complaining party sought from the trial court with sufficient specificity to make the trial court aware
of the complaint. Tex. R. App. P. 33.1(a)(1)(A). The trial court must have ruled on the request,
objection, or motion, either expressly or implicitly. Tex. R. App. P. 33.1(a)(2)(A). If the trial court
refused to rule, the complaining party must have objected to the refusal. Tex. R. App. P.
33.1(a)(2)(B). 

 After examining J.W. outside the presence of the jury, the trial court found the child
"completely competent" to testify at trial. However, the record does not reveal that Appellant
objected to the trial court's finding. Therefore, he presents nothing for our review. Accordingly,
Appellant's fourth issue is overruled.


Improper Jury Argument

 In his third issue, Appellant contends that closing arguments of the State's attorney during
both phases of the trial were improper, were not cured by instructions to disregard, and, thus,
constitute reversible error. The State argues that, if error did occur, the instructions to the jury were
sufficient to cure any harm.

Applicable Law

 An accused shall receive a fair trial, one free from improper jury argument by the prosecuting
attorney. Logan v. State, 698 S.W.2d 680, 681 (Tex. Crim. App. 1985). Proper jury argument must
fall within one of the following four categories: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law
enforcement. Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992); Allridge v. State, 762
S.W.2d 146, 155 (Tex. Crim. App. 1988). Even if the argument is outside one of these areas and
improper, an instruction by the trial judge to the jury to disregard the remarks will normally cure the
error. Cooks, 844 S.W.2d at 727; Logan, 698 S.W.2d at 682. Further, "if an instruction to disregard
was given but a motion for mistrial denied, then the question on appeal becomes whether the harm
from the improper argument in light of the instruction to disregard is sufficient to require reversal."
43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure
§ 37.21 (2d ed. 2001). 

 Reversible error results only when a statement to the jury is so inflammatory that its
prejudicial effect cannot reasonably be cured by an instruction to disregard. Logan, 698 S.W.2d at
682. In other words, if in light of the record as a whole, the jury argument was "extreme or
manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused,"
the error is reversible. Cooks, 844 S.W.2d at 727 (quoting Borjan v. State, 787 S.W.2d 53, 57 (Tex.
Crim. App. 1990)). Thus, the test for reversible error in jury argument is whether there is a
reasonable possibility that the argument complained of might have contributed to the conviction or
the punishment assessed. Allridge, 762 S.W.2d at 155. It becomes necessary, therefore, to look at
the evidence presented at both stages of the trial in making this determination. Id. 

Analysis

 During the State's rebuttal argument in the guilt-innocence phase of the trial, the State's
attorney stated that J.W., after visiting Appellant during the Christmas holidays, was different
according to his grandmother. The State's attorney argued that J.W. was different because "he had
been taught that it was nasty, taught that it was dirty, and he knew. . . ." Appellant objected that
counsel was arguing outside the record. The trial court sustained Appellant's objection and instructed
the jury to disregard the last portion of the State's argument. However, the trial court denied
Appellant's motion for a mistrial. 

 Next, the State's attorney told the jury that, although no one wants to think about or
deliberate on this type of crime, "there is one person who is counting on you to do exactly that, and
that person is sitting on the front row." Appellant objected that counsel was asking the jury to place
themselves in the shoes of the victim. The trial court sustained Appellant's objection and instructed
the jury to disregard the last portion of the State's argument. However, the trial court again denied
Appellant's motion for a mistrial. 

 Finally, during closing arguments in the punishment phase of the trial, the State's attorney
argued that "you can't rehabilitate someone who would do that to a child . . . [y]ou can't rehabilitate
someone like that. . . ." Appellant objected that counsel was arguing outside the record. The trial
court sustained Appellant's objection, instructed the jury to disregard the last portion of the State's
argument, but denied Appellant's motion for a mistrial. 

 Appellant argues that these improper arguments constituted repeated and conscious disregard
for the rules of proper jury argument and, thus, an instruction to disregard cannot cure the error.
Appellant cites Bennett v. State, 677 S.W.2d 121 (Tex. App.-Houston [14th Dist.] 1984, no pet.)
for the proposition that a prosecutor's repeated violation of the rules of proper jury argument cannot
be cured by an instruction to disregard. However, in Bennett, the court of appeals found twenty-four
objections by the appellant during the prosecutor's argument at the punishment stage of the trial,
thirteen of which were sustained by the trial court. Bennett, 677 S.W.2d at 126. The instant case
is distinguishable from Bennett. Even assuming the jury arguments in this case were improper, there
were only three instances during both stages of the trial where objections were sustained for
improper jury argument. Thus, Appellant's argument that the prosecutor repeatedly disregarded the
rules of proper jury argument is without merit.

 Moreover, Appellant fails to describe any justification or reason for a determination that these
statements to the jury were so inflammatory or improper that an instruction to disregard would not
cure the prejudicial effect of the error, if any. See Logan, 698 S.W.2d at 682. Therefore, Appellant
failed to show that the trial court's instructions to disregard the jury arguments did not cure the error,
if any, and that the arguments contributed to Appellant's conviction and punishment. Accordingly,
Appellant's third issue is overruled.


Evidentiary sufficiency

 In his first and second issues, Appellant argues that the evidence was legally and factually
insufficient to support his conviction of aggravated sexual assault. Appellant contends that there is
no credible evidence that he had oral sex of any kind with the child. Alternatively, Appellant argues
that the jury's finding that he had oral sex with J.W. was so groundless as to be clearly wrong and
unjust. The State contends that the testimony of the child was sufficient for the jury to find that
Appellant committed the offense. Further, the State argues that there was no evidence contrary to
the child's direct testimony. 

Standard of Review

 "Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction." Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed. 2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour, 8 S.W.3d at 671. The conviction will be sustained "unless it is found to be irrational or
unsupported by more than a 'mere modicum' of the evidence." Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). 
Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's
domain. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). If a reviewing court finds
the evidence legally insufficient to support a conviction, the result is an acquittal. Tibbs v. Florida,
457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). 

 After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing factual sufficiency, a court examines
all the evidence "without the prism of 'in the light most favorable to the prosecution' and sets aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Id. at 134. The court must inquire whether a neutral review of all the evidence, both
for and against the verdict, establishes that the proof of guilt is so manifestly weak as to undermine
faith in the jury's resolution, or the proof of guilt, although sufficient if taken alone, is greatly offset
by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

 A proper deference should be demonstrated by the reviewing court in order to deter a court
from substituting its judgment for that of the fact finder, and any examination of the evidence should
not substantially interfere upon the fact finder's role as the exclusive judge of the weight and
credibility given to witness testimony. Id. at 7; Clewis, 922 S.W.2d at 133. Wrong and unjust
verdicts include ones in which the verdict is "manifestly unjust," "shocks the conscience," or "clearly
demonstrates bias." Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). The
reviewing court examines all of the evidence in the record pertaining to the factual sufficiency
challenge, not just evidence confirming the verdict. Id. at 164. 

 In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge "would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id.

Elements of the Offense

 A person commits the offense of aggravated sexual assault if he (1) intentionally or
knowingly (2) causes the penetration of the mouth of a child by the sexual organ of the actor and (3)
the victim is younger than fourteen years of age. Tex. Pen. Code Ann. § 22.01 (a)(1)(ii), (a)(2)(B). 
Further, the offense is committed if a person (1) intentionally or knowingly (2) causes the mouth of
a child to contact the anus or sexual organ of another person, including the actor, and (3) the victim
is younger than fourteen years of age. Tex. Pen. Code Ann. § 22.01 (a)(1)(ii), (a)(2)(B). A child
under this section is a person younger than seventeen years of age who is not the spouse of the actor. 
Tex. Pen. Code Ann. § 22.011(c)(1)(Vernon 2003). A conviction of aggravated sexual assault may
be supported solely on the testimony of the victim. Garcia v. State, 563 S.W.2d 925, 928 (Tex.
Crim. App. [Panel Op.] 1978); Bottenfield v. State, 77 S.W.3d 349, 356 (Tex. App.-Fort Worth
2002, pet. ref'd).

Analysis 

 The evidence shows that J.W. told Marlyn that Appellant made J.W. put his mouth on
Appellant's penis. Further, Marlyn gave a statement to the police relating this incident. J.W. testified
that Appellant did "bad stuff" to him, that Appellant touched his "front privates" with his mouth, and
that Appellant made him touch Appellant's "front privates" with his mouth. Campbell testified that
J.W., in a second videotaped interview, stated he performed oral sex on Appellant. Based on our
review of the record and viewing the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the elements of aggravated sexual assault
beyond a reasonable doubt. Accordingly, Appellant's first issue is overruled.

 Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. In her first statement to police, Marlyn failed to describe J.W.'s account of the
second incident and never informed law enforcement or the district attorney's office that her first
statement did not include J.W.'s narration of the incident. Although Marlyn stated that she brought
up the second incident when she first told what happened to J.W., Scott testified to the contrary.

 In his first interview with Campbell, J.W. was asked if Appellant "had ever asked him to
suck his penis." J.W. said "no." However, in a second interview over a year later, Campbell asked
the same question. In response, J.W. stated that he did perform oral sex on Appellant. Further,
Gilmore contradicted J.W.'s testimony regarding the pattern on the love seat in Appellant's house,
and J.W.'s ability to climb or hide behind the attached back cushions on the couch. Moreover,
Gilmore disputed J.W.'s testimony that there was a bathroom in Appellant's bedroom. All this
evidence is favorable to Appellant. 

 It is within the jury's province to reconcile any conflicts or contradictions in the evidence. 
See Losada, 721 S.W.2d at 309. The jury could have resolved the conflicting testimony between
Gilmore and J.W. regarding the furniture in Appellant's house and the existence of a bathroom in
Appellant's bedroom in J.W.'s favor. In explaining his inconsistent responses to Campbell's
questions regarding oral sex, J.W. told Campbell that he said "no" in the first interview because
Appellant never asked him, but, instead, pushed his head down. Because J.W. provided a reasonable
explanation for his first statement to Campbell, the jury could have resolved the contradictions in
J.W.'s testimony in J.W.'s favor.

 Therefore, in reviewing the entire record, both for and against the jury's verdict, we do not
find that proof of Appellant's guilt is so manifestly weak as to undermine faith in the jury's
resolution, or that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting
proof so as to render Appellant's conviction clearly wrong or manifestly unjust. Accordingly,
Appellant's second issue is overruled.


Admissibility of Punishment Evidence

 In his fifth issue, Appellant contends that the trial court abused its discretion by allowing the
State to elicit testimony during the punishment phase of the trial from Marlyn who alleged Appellant
had molested her. Appellant argues that the evidence was not relevant, but, if it was, its probative
value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading of the jury. The State argues that there was no reversible error, and that evidence of prior
sexual misconduct was relevant for the jury in determining a proper sentence for Appellant. Further,
the State contends that the trial court properly considered the Rule 403 factors before admitting the
testimony.

Applicable Law

 An appellate court reviews the decision of a trial court to admit extraneous offenses under
an abuse of discretion standard. Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). At
the punishment phase of the trial, article 37.07 of the Texas Code of Criminal Procedure states as
follows:


 [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to
sentencing, . . . and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence
of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime or act.



Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2003). During the punishment
phase of the trial, the trial court is the authority on the threshold issue of admissibility of relevant
evidence. Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). Meanwhile, the jury,
as the exclusive judge of the facts, determines whether the State proved the extraneous offenses
beyond a reasonable doubt. Id. at 953-54. Although the Rule 401 definition of relevant evidence
may be helpful in determining what should be admissible under article 37.07, section 3(a), evidence
at sentencing presents different issues from those to be determined at the guilt-innocence stage of
the trial. Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Unlike the guilt-innocence
stage, the jury chooses from a punishment range and, thus, there are no discrete factual issues or
distinct facts of consequence that any proffered evidence can be said to make more or less likely to
exist. Id. (quoting Miller-El v. State, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990)). Therefore,
in the punishment context, relevancy is a question of what is helpful to the jury in determining the
appropriate sentence for a particular defendant. Rogers, 991 S.W.2d at 265; Mitchell, 931 S.W.2d
at 954. 

 The legislature, as part of its policy-making function, also helps determine the relevancy of
evidence at the punishment stage of the trial. Najar v. State, 74 S.W.3d 82, 87 (Tex. App.-Waco
2002, no pet.). The legislature's policies on punishment include insuring the public safety through
the deterrent influence of the penalties provided, the rehabilitation of those convicted, and such
punishment as may be necessary to prevent the likely recurrence of criminal behavior. Rogers, 991
S.W.2d at 265-66 (citing Tex. Pen. Code Ann. § 1.02(1) (Vernon 2003)). If a defendant asks for
a recommendation of community supervision instead of imprisonment and the jury so recommends,
the trial court must place the defendant on community supervision. Najar, 74 S.W.3d at 87.
Therefore, as a matter of policy, the legislature has determined that community supervision is a
relevant issue at the punishment stage of a jury trial. Id.

 However, admission of potentially prejudicial evidence is governed by Texas Rule of
Evidence 403. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001). Rule 403 states as
follows:


 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence.



Tex. R. Evid. 403. When determining whether evidence was properly admitted, the question is not
whether the evidence is more prejudicial than probative, but rather, whether the probative value of
the evidence is substantially outweighed by the danger of unfair prejudice. Salazar, 38 S.W.3d at
151. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be
made on an improper basis." Reese v. State, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000) (quoting
Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990)). A trial judge's Rule 403
decision will be reviewed for abuse of discretion and will be reversed only if the decision is outside
the zone of reasonable disagreement. Salazar, 38 S.W.3d at 151; Montgomery, 810 S.W.2d at 391. 

 If a proper Rule 403 objection is made, a trial court must engage in the balancing test
required by the rule. Rankin v. State, 974 S.W.2d 707, 710-11 (Tex. Crim. App. 1996). In
reviewing a trial court's balancing test decision, an appellate court is to reverse the trial court's
judgment "rarely and only after a clear abuse of discretion." Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999); Montgomery, 810 S.W.2d at 392. The trial court's ruling must be
measured against the relevant criteria of a Rule 403 inquiry-that is, the proponent's need for the
evidence in addition to determining the relevance of the evidence. Mozon, 991 S.W.2d at 847.
Further, the trial court's conclusion must be reasonable in view of all relevant facts. Reese, 33
S.W.3d at 241 (quoting Santellan v. State, 939 S.W.2d at 169). The relevant criteria for determining
whether the prejudice of an extraneous offense outweighs its probative value are (1) how probative
the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but
nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the
proponent's need for the evidence. Reese, 33 S.W.3d at 240-41. When the record reveals that one
or more of the relevant criteria reasonably contributed to a risk that the probative value of the
tendered evidence was substantially outweighed by unfair prejudice, then an appellate court should
conclude that the trial court acted irrationally in failing to exclude it, and, thus, abused its discretion. 
Montgomery, 810 S.W.2d at 393.

Analysis

 In opening arguments during the punishment phase of the trial, the State's attorney began to
relate Marlyn's expected testimony. Appellant objected and countered that there was a motion in
limine regarding extraneous offenses. However, the State argued that this testimony was offered as
punishment evidence under Code of Criminal Procedure article 37.07, and that the nature of the
testimony regarded Appellant's prior conduct with Marlyn. Appellant objected that the time of the
offense was too remote and that, according to Texas Rule of Evidence 403, the prejudicial value far
exceeded the probative value.

 The trial court overruled the objection and found that article 37.07 allows a trial court to
admit evidence of an extraneous offense if it believes the offense is relevant. Because Appellant
filed an application for probation, the trial court found that it was important for the jury to hear
evidence in order to make a meaningful decision about whether Appellant should be released on
probation or confined to the penitentiary. Further, because Marlyn would be testifying, the evidence
would be direct evidence and would meet the burden of proof for proffering extraneous offenses
under article 37.07. Moreover, the trial court found the evidence was relevant, and that it directly
concerned issues for the jury to determine regarding punishment, rehabilitation, deterrence, and
community safety. After applying the balancing test of Rule 403, the trial court found that the
evidence, while certainly prejudicial, was also probative and that the prejudicial value did not
outweigh the probative value.

 We begin our review by determining whether the trial court abused its discretion in deciding
that the extraneous offenses evidence was relevant to Appellant's sentencing, including consideration
of community supervision. Evidence that helps a jury determine an appropriate sentence for a
defendant is relevant at the punishment stage of a trial. See Rogers, 991 S.W.2d at 265; Mitchell,
931 S.W.2d at 954. Appellant applied for felony probation from the jury, and, thus, sentencing
Appellant to community service instead of incarceration was an issue for the jury to decide. See
Najar, 74 S.W.3d at 87. Therefore, the trial court did not abuse its discretion in determining that
alleged extraneous offenses of Appellant were relevant to the issue of punishment. 

 Next, we must determine whether the trial court abused its discretion in failing to exclude
the evidence of extraneous offenses under Rule 403. We must not reverse the trial court's
determination unless the decision was outside the zone of reasonable disagreement. See Salazar,
38 S.W.3d at 151; Montgomery, 810 S.W.2d at 391. Marlyn's testimony included allegations that
Appellant, her stepfather, touched her breasts and hips and made lewd remarks to her when she was
approximately twelve years old. According to Marlyn, Appellant's molestation continued until she
was approximately eighteen years old. However, Marlyn testified that she never felt threatened by
Appellant, but regarded him as a "dirty old man." When she moved back to her mother's house as
an adult, Appellant's sexual advances continued and intensified until she left the home. In our
review of the Rule 403 balancing test, the first factor is the probative value of the evidence. The
evidence shows that Appellant allegedly molested a young girl within his family circle and, while
not identical to his actions against J.W., reveals a prior, similar offense. To the State, the value of
this evidence is highly probative in determining whether community supervision is an appropriate
sentence for Appellant. However, this evidence is also prejudicial to Appellant, especially
considering the remoteness of this offense to the crime for which he was convicted.

 The second factor in our review is the potential of the evidence to impress the jury in some
irrational, but nevertheless, indelible way. The jury would undoubtedly be impressed by Marlyn's
testimony that she, too, was molested at a young age by Appellant. This evidence could potentially
prejudice the jury against Appellant in determining whether community supervision would protect
the community and would possibly rehabilitate Appellant. However, this testimony, although
impressive, may not have had the potential to irrationally affect the jury because the testimony was
not particularly descriptive nor did Marlyn seem unduly anguished by Appellant's actions. The third
factor is the time the proponent needs to develop the evidence. Marlyn's testimony regarding
Appellant's extraneous offenses covered less than eight pages of the record. Thus, the time spent
developing this testimony was brief.

 The fourth factor in our review is the proponent's need for the evidence. This factor has three
subparts: (1) whether the proponent has other available evidence to establish the fact of consequence
that the evidence is admissible to show; (2) the strength of the other available evidence, if any; and
(3) whether the fact of consequence is related to an issue that is in dispute. See Reese, 33 S.W.3d
at 242. There was no other available evidence to establish Appellant's extraneous offenses against
Marlyn other than her testimony. Further, evidence of these extraneous offenses relates to the
disputed issue of Appellant's punishment, and whether community supervision or incarceration is
appropriate.

 We conclude that the third and fourth factors in this balancing test weigh in favor of the
State. Although the first and second factors weigh in favor of Appellant, the evidence of extraneous
offenses is relevant to determining the appropriate sentence for Appellant, and the probative value
is not substantially outweighed by the dangers of unfair prejudice. See Salazar, 38 S.W.3d at 151.
Further, we hold that the trial court's determination is not outside the zone of reasonable
disagreement, and, therefore, not an abuse of its discretion. Id.; Montgomery, 810 S.W.2d at 391. 
Accordingly, Appellant's fifth issue is overruled.


Validity of the Jury's Verdicts

 In his sixth issue, Appellant contends that cumulative errors in the trial undermine the
validity of the jury's verdicts. Appellant cites Ruth v. State, 522 S.W.2d 517, 519 (Tex. Crim. App.
1975) for the proposition that a court is duty-bound to award a new trial if any doubt exists as to the
fairness or impartiality of a trial. Because of the "sheer volume" of errors in his trial, Appellant
asserts that the verdicts and punishments are suspect. Appellant argues that his convictions should
be reversed and either an acquittal or a new trial ordered. The State contends that there were no
cumulative errors that constituted reversible error. We have not found any preserved errors in the
trial. See Andrews v. State, 794 S.W.2d 46, 50 (Tex. App.-Texarkana 1990, pet. ref'd).
Accordingly, Appellant's sixth issue is overruled.


Conclusion

 Having overruled Appellant's issues, we affirm the judgment of the trial court.



 DIANE DEVASTO 

 Justice



Opinion delivered October 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.






























(DO NOT PUBLISH)
1. A person commits a second degree felony if, with a child younger than seventeen years of age and not the
person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact.
Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon 2003). "Sexual contact" means the act of touching by a person,
including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the
intent to arouse or gratify the sexual desire of a person. Tex. Pen. Code Ann. § 21.11(c)(1).
2. A person commits a first degree felony if the person, intentionally or knowingly, causes the penetration of
the mouth of a child by the sexual organ of the actor, and the victim is younger than fourteen years of age. Tex. Pen.
Code Ann. § 21.021 (a)(1)(B)(ii), (a)(2)(B) (Vernon 2003). Further, a person commits a first degree felony if the
person, intentionally or knowingly, causes the mouth of a child to contact the anus or sexual organ of another person,
including the actor, and the victim is younger than fourteen years of age. Tex. Pen. Code Ann. § 21.021(a)(1)(B)(v),
(a)(2)(B).